# United States Court of Appeals for the Federal Circuit

---

**TRIPLE CANOPY, INC.,**
*Appellant*

**v.**

**SECRETARY OF THE AIR FORCE,**
*Appellee*

---

2020-2165

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 61415, 61416, 61417, 61418, 61419, 61420, Administrative Judge Kenneth David Woodrow, Administrative Judge Owen C. Wilson, Administrative Judge Richard Shackleford.

---

Decided: September 29, 2021

---

JONATHAN DAVID SHAFFER, Smith, Pachter, McWhorter, PLC, Vienna, VA, argued for appellant. Also represented by TODD MATTHEW GARLAND, RICHARD C. JOHNSON, Tysons Corner, VA.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

_____

Before NEWMAN, SCHALL, and DYK, *Circuit Judges.*

SCHALL, *Circuit Judge.*

Triple Canopy, Inc. ("Triple Canopy"), appeals the decision of the Armed Services Board of Contract Appeals ("Board") that denied six consolidated appeals brought by Triple Canopy under the Contract Disputes Act of 1978, 41 U.S.C. § 7101 *et seq.* ("CDA"). *Triple Canopy, Inc.,* ASBCA Nos. 61415, 61416, 61417, 61418, 61419, 61420, 20-1 BCA ¶ 37,675. The Board denied the appeals after concluding that the claims asserted in them were time-barred because they were not submitted to the contracting officer within six years of when they accrued, as required by 41 U.S.C. § 7103(a)(4)(A). Because we conclude that the Board erred as a matter of law in determining when Triple Canopy's claims accrued, we reverse and remand.

## BACKGROUND

### I.

Triple Canopy is a private security company ("PSC"). Its appeal arises out of its performance of six separate, fixed-price contracts for security services in Afghanistan. The contracts were awarded during the period March 15, 2009, through September 17, 2010. *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,894. The contracts were awarded by the Department of Defense, through the Combined Joint Special Operations Task Force-Afghanistan ("CJSOTF-A"). *Id.* Each of the contracts required that Triple Canopy comply with local law and incorporated Federal Acquisition Regulation ("FAR") 52.229-6, Taxes—Foreign Fixed-Price

Contracts (June 2003) ("Foreign Tax Clause").[1] *Id.* That FAR provision provides in relevant part, as follows:

> [T]he contract price shall be increased by the amount of any after-imposed tax or of any tax or duty specifically excluded from the contract price by a provision of this contract that the Contractor is required to pay or bear, including any interest or penalty, if the Contractor states in writing that the contract price does not include any contingency for such tax and if liability for such tax, interest, or penalty was not incurred through the Contractor's fault, negligence, or failure to follow instructions of the Contracting Officer or to comply with the provisions of paragraph (i) below.
>
> . . . .
>
> (i) The Contractor shall take all reasonable action to obtain exemption from or refund of any taxes or duties, including interest or penalty, from which the United States Government, the Contractor, any subcontractor, or the transactions or property covered by this contract are exempt under the laws of the country concerned or its political subdivisions or which the governments of the United States and of the country concerned have agreed shall not be applicable to expenditures in such country by or on behalf of the United States.

FAR § 52.229-6(d)(1), -6(i).

## II.

In February of 2008, the Government of the Islamic Republic of Afghanistan ("GIRA") issued a directive entitled "Procedure for Regulating Activities of Private Security

---

[1]    The FAR is codified in title 48 of the Code of Federal Regulations.  For brevity, we refer to the FAR without corresponding C.F.R. citations.

Companies in Afghanistan" ("PSC Regulation"). *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,893. Article 7 of the PSC Regulation required all PSCs to observe Afghan law, including the PSC Regulation itself. *Id.* Article 10 of the PSC Regulation provided: "The number of staff of each Security Company shall not be more the [sic] 500 people, unless the Council of Ministers agrees an increased number of staff." *Id.* Although the PSC Regulation limited the number of PSC personnel to 500, the regulation did not provide for the imposition of fees or penalties on PSCs operating in Afghanistan that exceeded the 500-person limit.

On August 13, 2010, the contracting officer ("CO"), Air Force Captain Brussell C. Bungay, sent a letter to Afghanistan's Ministry of Interior ("MOI") on behalf of the Department of Defense. Corrected Joint Appendix ("J.A.") 282–83. In the letter, the CO informed the MOI that "Triple Canopy's manning requirement in support of US Military contracts will exceed 500 personnel." *Id.* at 283.[2] The CO stated:

> In order to ensure there is no disruption to Afghanistan's reconstruction process, the CJSOTF-A [ ] respectfully requests an exemption excepting from the 500 allowable security staff, for the above referenced contracts. It is understood and expected that Triple Canopy will still be required to abide by all other relevant laws and regulations as a licensed Private Security Company.

*Id.* The CO further stated: "This exemption shall be considered immediately valid by both [ ] CJSOTF-A and Triple Canopy." *Id.* On August 16, 2010, Triple Canopy

---

[2]    Although none of the individual contracts required that Triple Canopy supply more than 500 personnel, the contracts combined required it to provide more than the 500 personnel specified by Article 10 of the PSC Regulation. *Triple Canopy*, 20-1 BCA ¶37,675 at 182,894.

submitted the CO's letter to the MOI in support of its request that the MOI issue it a formal exemption with respect to the 500-person limit. *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,895.

On March 15, 2011, GIRA issued Presidential Directive No. 7339 ("PD7339"). *Id.* PD7339 required that all PSCs operating in Afghanistan pay a fee of 100,000 Afghan Afghani ("AFN") (Afghan currency), a sum equal to $2,323.42 at that time, for each person over the 500-employee cap and 250,000 AFN ($5,808.56) for each foreign national working without an Afghan visa. *Id.*

On March 24, 2011, GIRA implemented PD7339 by assessing "penalties" for each individual Triple Canopy employed over the 500-person limit. J.A. 429. The penalties were assessed against Triple Canopy's total number of personnel across all of its contracts. *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,895. The assessment totaled 37,860,000 AFN ($879,647.95).[3] GIRA directed Triple Canopy to pay the assessment within 15 days. J.A. 429. GIRA informed Triple Canopy, however, that if it objected to the assessment, it could provide its "reasoning in writing" within two weeks. *Id.*[4]

On March 27 and 28, 2011, representatives of the Department of Defense again issued memoranda to GIRA

---

[3]    The penalties assessed included 24,900,000 AFN for 204 people exceeding the 500-person cap, including 7,500,000 AFN for 30 foreign nationals working without Afghan visas. The assessment also included additional penalties of 12,960,000 AFN relating to weapons registered by Triple Canopy. J.A. 429.

[4]    The Board, *see Triple Canopy*, 20-1 BCA ¶37,675 at 182,895, and the parties, *see* Appellant's Br. 10 and Appellee's Br. 6, all are of the view that the March 24, 2011 GIRA assessment gave Triple Canopy the right to appeal the assessment. We agree.

requesting that Triple Canopy be exempted from the 500-person limit "to ensure there is no disruption to Afghanistan's reconstruction process." *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,895; J.A. 430–34.

Triple Canopy formally appealed the assessment on April 8, 2011. *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,895. In its appeal, Triple Canopy indicated it had first sought an exemption with respect to the 500-person limit in August of 2010 and that it was waiting for the MOI's High Coordination Board and Council of Ministers to approve its request to maintain up to 1,000 personnel in Afghanistan. J.A. 435, 438–39. Thereafter, on April 21, 2011, Triple Canopy informed the CO that it would submit requests for equitable adjustments if its appeal of the March 24 assessment was denied. *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,895.

On July 6, 2011, GIRA sent a letter to Triple Canopy adjusting the total penalty assessed in its March 24 letter. *Id.* The total penalty assessed was reduced to 18,550,000 AFN ($430,994.97). *Id.*[5] On July 18 and 20, 2011, Triple Canopy paid the reduced assessment. *Id.* at 182,896.

### III.

On June 6, 2017, within six years of both GIRA's letter of July 6, 2011, and Triple Canopy's payment of the reduced assessment on July 18 and 20, 2011, Triple Canopy submitted claims to the CO under each of the six CJSOTF-A contracts. *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,896. In its claims, Triple Canopy sought reimbursement under the Foreign Tax Clause for the penalties it had paid to

---

[5]    The July 6 letter assessed a penalty of 100,000 AFN per person for 174 Afghan nationals and four foreign nationals and a penalty of 250,000 AFN per person for three additional foreign nationals working without Afghan visas. J.A. 446–47. The letter did not assess any penalty for weapons. *Id.*

GIRA allocable to each contract. *See id.* On November 20, 2017, after the CO failed to issue a final decision, Triple Canopy's claims were deemed denied. *See* 41 U.S.C. § 7103(a)(3), (f)(5); FAR § 33.211(a)(4), (g). Triple Canopy then appealed to the Board.

As noted above, the Board denied Triple Canopy's appeals on the grounds that the asserted claims were time-barred because they were not submitted to the CO within six years of the date they accrued, as required by 41 U.S.C. § 7103(a)(4)(A).

Although the CDA does not define claim accrual, the FAR does. The FAR defines "[a]ccrual of a claim" as "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred." FAR 33.201.

The Board began its analysis as to when Triple Canopy's claims accrued by observing that, to determine when the claims accrued and when the events that fixed the government's alleged liability were known, it was required to examine the legal basis for the claims. The legal basis for Triple Canopy's claims, the Board determined, was FAR 52.229-6, the Foreign Tax Clause provision noted above that was incorporated into each of Triple Canopy's CJSOTF-A contracts. As seen, that provision provides, in relevant part, that "the contract price shall be increased by the amount of any after-imposed tax or of any tax or duty . . . that the Contractor is required to pay or bear, including any interest or penalty . . . if liability for such tax, interest, or penalty was not incurred through the Contractor's . . . failure . . . to comply with the provisions of paragraph (i) below." FAR 52.229-6(d)(1). The Board stated that, if it accepted Triple Canopy's contention that the GIRA assessment was an "after-imposed tax," then Triple Canopy's "legal obligation to pay the assessment [arose]

when Triple Canopy [was] 'required to pay or bear' the assessment." *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,896. Noting that there was "no dispute that GIRA demanded payment of the assessment on March 24, 2011," *id.*, the Board reasoned that Triple Canopy "knew it was obligated to pay the GIRA assessment when it received GIRA's demand letter" on March 24, 2011, *id.* at 182,897. Thus, in the Board's view, the claims accrued on March 24, 2011, more than six years before they were submitted to the CO on June 6, 2017.

In its decision, the Board rejected Triple Canopy's argument that its claims did not accrue until it paid the revised penalty assessments on July 18 and 20, 2011. In so doing, the Board agreed with the government that Triple Canopy's obligation to pay the penalties was fixed on March 24, 2011, when GIRA assessed the penalties. The Board stated that "[o]nce Triple Canopy became legally obligated to pay the assessment, the costs were incurred. The fact that the final amount could change does not matter, nor does the fact that actual payment had not yet occurred." *Id.* (first citing *Gray Pers., Inc.*, ASBCA No. 54652, 06-02 BCA ¶ 33,378 at 165,476; then citing *McDonnell Douglas Servs., Inc.*, ASBCA No. 56568, 10-1 BCA ¶ 34,325 at 169,528).

The Board also rejected Triple Canopy's argument that its claims under the contracts did not accrue until it exhausted its appeal right because it was required to do so under paragraph (i) of the Foreign Tax Clause. In so holding, the Board distinguished *Kellogg Brown & Root Services, Inc. v. Murphy*, 823 F.3d 622 (Fed. Cir. 2016). There, we stated that the CDA limitations period "does not begin to run if a claim cannot be filed because mandatory preclaim procedures have not been completed." *Id.* at 628. In *Kellogg Brown*, the Army repeatedly told contractor KBR that it had to resolve its disputed costs with its subcontractor before KBR could present a claim for reimbursement of those costs. Consequently, in *Kellogg Brown*, we held that KBR's claim accrued only after it had resolved the disputed

costs with its subcontractor and KBR had received a claim from its subcontractor. *Id.* at 628–29. After contrasting the facts of *Kellogg Brown* with the circumstances of Triple Canopy's claims, the Board stated: "[W]e conclude that the process of appealing the fine levied on Triple Canopy was not mandatory, but was rather an optional process Triple Canopy elected to undergo in order to potentially reduce the amount of the fine . . . . Therefore, the appeal process did not toll the statute of limitations." *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,898.

Having found that each of Triple Canopy's claims was submitted more than six years after it had accrued, the Board denied each of Triple Canopy's appeals as time barred. Following the Board's denial of its appeals, Triple Canopy timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

## DISCUSSION

### I.

Pursuant to 41 U.S.C. § 7107(b)(1), we review the Board's decisions on questions of law de novo. *Parsons Glob. Servs., Inc. v. McHugh*, 677 F.3d 1166, 1170 (Fed. Cir. 2012). Interpretation of a government contract and interpretation of applicable procurement regulations are questions of law subject to de novo review. *Forman v. United States*, 329 F.3d 837, 841 (Fed. Cir. 2003); *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc).

### II.

On appeal, Triple Canopy argues that the Board erred in ruling that its claims accrued when GIRA assessed it penalties on March 24, 2011. As noted above, FAR 33.201 provides that a claim accrues "when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred." Triple Canopy contends that, as

of March 24, 2011, all events that fixed its liability had not occurred. Noting that its six contracts were fixed-price contracts, Triple Canopy argues that it had no right to seek an adjustment of the contract prices unless contract provisions granted it that right. As it did before the Board, Triple Canopy points to the Foreign Tax Clause as such a provision and argues that no claims accrued under that clause until it complied with paragraph (i) of the clause, which required that it "take all reasonable action to obtain exemption from or refund of any taxes or duties." FAR 52.229-6(i). Triple Canopy posits that this meant it had to appeal the GIRA assessment before it could submit claims under the clause. Hence, Triple Canopy reasons its claims did not accrue until GIRA ruled on its appeal. *See* Appellant's Br. 13, 20–26.

The government responds that the Board correctly held that Triple Canopy's claims accrued on March 24, 2011, the date on which GIRA assessed Triple Canopy penalties for violating its directive limiting the number of personnel PSCs could employ in Afghanistan. The government states that March 24 was the date when Triple Canopy knew it was obligated to pay the GIRA assessment. It was at that point, the government argues, that "all events had taken place that fixed purported liability under the FAR provision at issue, and Triple Canopy knew or should have known that they had taken place." Appellee's Br. 13–14.

The government also urges us to reject Triple Canopy's argument that its claims did not accrue until the GIRA appeal process was completed. The government contends that paragraph (i) of the Foreign Tax Clause did not set forth a mandatory pre-claim procedure that prevented submission of the claims as of March 24, 2011. The government notes that paragraph (i) only requires a contractor to take "all reasonable action to obtain exemption" from "any taxes" or "penalt[ies]," and it states that this requirement is only triggered when the contractor is "exempt under the laws of the country concerned." Appellee's Br. 20, quoting FAR 52.229-6(i). According to the government, Triple

Canopy has failed, both before the Board and now on appeal, to identify a legal basis for its claimed exemption from the 500-person limit. *Id.* The government states that because Triple Canopy is a PSC and because there is no dispute that it had more than 500 personnel in the country at the time of GIRA's penalty assessment, it "was not required to take any additional action with . . . GIRA by pursuing a legal exemption that did not exist, and the [B]oard properly found that such a process was not mandatory." *Id.* In other words, the government contends that because Triple Canopy could not qualify for an exemption from the GIRA directive, paragraph (i) of the Foreign Tax Clause did not apply. Thus, Triple Canopy was not required to appeal GIRA's assessment. Finally, the government argues that the plain language of FAR 52.229-6 does not dictate that a contractor must take its "reasonable action" seeking an exemption prior to submitting a claim under the CDA. The government concludes that Triple Canopy's appeal does not present the situation addressed in *Kellogg Brown*, where a claim could not be filed "because mandatory pre-claim procedures [had] not been completed." Appellee's Br. 21 (quoting *Kellogg Brown*, 823 F.3d at 628).

In the alternative, the government urges us to affirm the Board's decision on the ground that Triple Canopy failed to establish entitlement to a contract adjustment under FAR 52.229-6(d). That is, the government argues that we should find that Triple Canopy did not establish that the GIRA's assessment constituted a "tax" requiring a contractual adjustment pursuant to the Foreign Tax Clause. *Id.* at 11, 28–33.

### III.

We have stated that "when a CDA claim accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case." *Kellogg Brown*, 823 F.3d at 626 (citing *Parsons Glob. Servs.*, 677 F.3d at 1170). In our view, the FAR, the conditions of Triple Canopy's CJSOTF-A contracts, and the facts of the

case compel the conclusion that Triple Canopy's claim did not accrue until its appeal of the GIRA assessments was decided on July 6, 2011.

We begin with the governing FAR provision. Pursuant to FAR 33.201, a contractor's claim accrues "when all events, that fix the alleged liability of . . . the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred."

We turn next to "the conditions of the contract" and "the facts of the particular case." As seen, the relevant contract provision is the Foreign Tax Clause, which was contained in each of Triple Canopy's six contracts. Paragraph (d) of the clause provides in relevant part that "the contract price shall be increased by the amount of any after-imposed tax or of any tax or duty . . . that the Contractor is required to pay or bear, including any interest or penalty . . . if liability for such tax, interest, or penalty was not incurred through the Contractor's . . . failure . . . to comply with the provisions of paragraph (i) below." Paragraph (i) provides in relevant part that "[t]he Contractor shall take all reasonable action to obtain exemption from . . . any taxes or duties, including interest or penalty, from which the United States Government, the Contractor, any subcontractor, or the transactions or property covered by this contract are exempt under the laws of the country concerned."

We agree with Triple Canopy that, because it was seeking reimbursement of the GIRA assessment pursuant to the Foreign Tax Clause, it had to comply with paragraph (i)'s requirement that it "take all reasonable action" to obtain "exemption" from the assessment. This meant appealing the assessment. In the circumstances of this case, we thus view the appeal to GIRA as a "mandatory preclaim procedure" that had to be completed in order for Triple Canopy's claims to accrue and the CDA limitations

period to begin to run. *Kellogg Brown*, 823 F.3d at 628; *cf. Electric Boat Corp. v. Sec'y of the Navy*, 958 F.3d 1372, 1376 (Fed. Cir. 2020) (quoting *Kellogg Brown* but noting that "the contract [at issue] did not require that Electric Boat undertake any such procedures").

We are unable to agree with the Board and the government that Triple Canopy's obligation to pay the assessment was fixed on March 24, 2011, when GIRA first assessed the penalties. *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,897. The problem with the Board's conclusion is that it overlooks the requirement of paragraph (i) of the Foreign Tax Clause that Triple Canopy "take all reasonable action" to obtain an exemption from the penalties.

The Board dismissed Triple Canopy's argument that, pursuant to paragraph (i) of the Foreign Tax Clause, it was required to appeal the GIRA penalty assessment before submitting its claims to the CO. We disagree. We think the structure and language of the Foreign Tax Clause defeats any suggestion that, in this case, pursuing an appeal of the GIRA assessment before Triple Canopy submitted its claims to the CO was optional. The Department of Defense repeatedly requested an exemption from GIRA on behalf of Triple Canopy and indicated that such an exemption would be "considered immediately valid" by the Department of Defense and Triple Canopy. *Id.* at 182,894–95. Having been informed by the Department of Defense that it was considered to have a "valid" "exemption" from the 500-person limit, Triple Canopy could not properly disregard paragraph (i)'s requirement that it "take all reasonable action" and not appeal the GIRA assessment, and still be eligible for reimbursement under the Foreign Tax Clause for the "penalties" that were assessed against it.

In our view, *Kellogg Brown* is controlling. It is true that, in *Kellogg Brown*, the Army repeatedly told contractor KBR that it had to resolve its disputed costs with its subcontractor before KBR could submit a claim for reimbursement of those costs. 823 F.3d at 628. It also is true

that in this case there are no similar statements by the CO with respect to Triple Canopy appealing the GIRA assessment. Nevertheless, we have no difficulty concluding that, in view of paragraph (i) of the Foreign Tax Clause and the Department of Defense's repeated assurances that Triple Canopy was considered to have a valid exemption from the 500-person limit, it was proper for Triple Canopy to conclude that appealing the GIRA assessment was a "mandatory pre-claim procedure[ ]," *id.*, and that it should act accordingly. That meant appealing the GIRA assessment before submitting its claims to the CO. *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 510–12, 514 (1967) (pre-CDA case, finding that a government contractor's claim "first accrued" for purposes of the statute of limitations "upon the completion of the administrative proceedings contemplated and required by the provisions of the contract" rather than at the time of the contract's completion).[6]

In its decision, the Board relied upon *Gray Personnel, Inc.*, ASBCA No. 54652, 06-02 BCA ¶ 33,378, and *McDonnell Douglas Services, Inc.*, ASBCA No. 56568, 10-1 BCA ¶ 34,325, in concluding that Triple Canopy's obligation to pay the GIRA assessment was fixed on March 24, 2011. In *Gray Personnel*, the Board addressed the requirement of FAR 33.201 that "some injury" must have occurred in addressing whether Gray needed to have completed the government's delivery order or the contract for liability to be "fixed" and, accordingly, for Gray's claim to have accrued.

---

[6]    At the end of its decision, in addressing an argument by Triple Canopy that it could not properly submit a claim to the CO while simultaneously appealing the GIRA assessment, the Board stated: "[P]ursuant to [the Foreign Tax Clause], Triple Canopy had a duty . . . to challenge the amount of the fine." *Triple Canopy*, 20-1 BCA ¶37,675 at 182,898. We agree with this statement, which is consistent with our conclusion above.

06-02 BCA ¶ 33,378 at 165,476.  The Board concluded that Gray need not have completed the delivery order or contract, stating that "[t]he CDA permits contractors to submit claims before they have incurred the total costs relating to the claim." *Id.*  In reaching this conclusion, the Board noted Congress's intent that "contractors . . . submit claims as soon as they are identified."  *Id.* (quoting *Servidone Constr. Corp. v. United States*, 931 F.2d 860, 863 (Fed. Cir. 1991)).  In *McDonnell Douglas*, the Board determined that the government was "on notice of, was aware of, or should have been aware of, its potential defective pricing claim against the prime contractor" more than six years before two contracting officers' decisions issued in June 2008 that asserted the claim.  10-1 BCA ¶ 34,325 at 169,529.  The Board rejected the government's argument that its earliest possible claim accrual date was the date on which it received a final prime contractor audit because prior to that it did not know the "sum certain" for which McDonnell was allegedly liable.  *Id.* at 169,527–28.  In both *Gray Personnel* and *McDonnell Douglas*, therefore, the relevant point in time for purposes of determining when liability was fixed was when the claimant became aware of, or should have been aware of, its potential claim, even if the amount of the claim had not been fixed.  *See Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,897.

We are not bound by Board decisions.  *See Raytheon Co. v. United States*, 747 F.3d 1341, 1352 (Fed. Cir. 2014).  In any event, in view of the requirements of paragraph (i) of the Foreign Tax Clause, and the Department of Defense's repeated requests to GIRA that Triple Canopy be exempt from the 500-person limit of Article 10 of the PSC Regulation, *Gray Personnel* and *McDonnell Douglas* clearly are distinguishable from this case.

We also are not persuaded by the government's additional arguments on appeal.  The government takes the position that paragraph (i) of the Foreign Tax Clause only requires a contractor to "take all reasonable action to obtain exemption" from a tax or penalty.  As noted, the

16        TRIPLE CANOPY, INC. v. SECRETARY OF THE AIR FORCE

government states that Triple Canopy has never identified a legal basis for its claimed exemption. The government also argues that because it is undisputed that Triple Canopy had more than 500 personnel in the country at the time of the penalty assessment, Triple Canopy was not obligated to "pursu[e] a legal exemption that did not exist." Appellee's Br. 20.

We do not agree. We do not see how it can be argued that, in its appeal to GIRA, Triple Canopy failed to claim a legal exemption from the GIRA penalty. Triple Canopy first sought an exemption with respect to the 500-person limit in August of 2010. *Triple Canopy*, 20-1 BCA ¶ 37,675 at 182,895. Thereafter, in its GIRA appeal, Triple Canopy expressly referenced the Department of Defense's August 2010 communication to the MOI. *See* J.A. 438–39. As seen, in that communication the CO stated that the Department of Defense was requesting an exemption from the 500-person limit to ensure that there was "no disruption to Afghanistan's reconstruction process." J.A. 283. In our view, seeking an exemption from the 500-person limit in order to prevent disruption to Afghanistan's reconstruction process was tantamount to asserting a legal basis for the purpose of securing an exemption, regardless of the number of employees Triple Canopy presently had in the country. Moreover, we think it was reasonable for Triple Canopy to take the position that it was exempt "under the laws of the country concerned," pursuant to paragraph (i) of the Foreign Tax Clause, because the United States Department of Defense had repeatedly requested an exemption that was "considered immediately valid," and because Triple Canopy had not received notice from the High Coordination Board that its exemption request had been denied. Significantly, while the contractor's appeal did not result in an exemption, it did result in a substantial reduction of the assessment. The government's suggestion that the appeal was somehow meritless is difficult to fathom. It would hardly serve the government's interest for the contractor to forego an appeal that substantially benefited the government.

CONCLUSION

For the foregoing reasons, we hold that Triple Canopy's claims under the six contracts did not accrue until July 6, 2011, the date GIRA issued its decision in response to Triple Canopy's April 8, 2011 appeal. Triple Canopy's claim submission to the CO on June 6, 2017 was thus within the six-year CDA limitations period. The Board therefore erred as a matter of law in denying Triple Canopy's appeal. The decision of the Board is reversed, and Triple Canopy's appeal is remanded to the Board for proceedings on the merits.[7]

**REVERSED AND REMANDED**

COSTS

Costs to Triple Canopy.

---

[7]    As noted, the government urges us to hold that Triple Canopy did not establish that GIRA's assessment constituted a "tax" for purposes of the Foreign Tax Clause, which the government argues is the prerequisite for an adjustment under FAR 52.229-6(d). The contractor argues that the Foreign Tax Clause embraces more than "taxes." Reply Br. 18. As Triple Canopy notes, Reply Br. 16, the Board made no findings on the scope of the clause or the factual question regarding the nature of the GIRA assessment. This question of fact is not for us to decide in the first instance on appeal. We therefore do not address it. It is for the Board to consider on remand.