ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Afghan Premier Logistics | ) | ASBCA Nos. 62938, 62939, 62940 |
| | ) | |
| Under Contract No. W91B4N-11-D-7003 | ) | |

APPEARANCE FOR THE APPELLANT:          Michael D. Maloney, Esq.
                                         Williams Mullen
                                         Tysons Corner, VA

APPEARANCES FOR THE GOVERNMENT:     Scott N. Flesch, Esq.
                                         Army Chief Trial Attorney
                                       MAJ Aaron K. McCartney, JA
                                       MAJ Jill B. Wiley, JA
                                       LT Bryan R. Williamson, JA
                                       Zachary F. Jacobson, Esq.
                                       James D. Stephens, Esq.
                                         Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE PROUTY
ON APPELLANT'S MOTION FOR RECONSIDERATION[1]

Before us is a motion to reconsider our earlier decision to dismiss these appeals on statute of limitations grounds. *See Afghan Premier Logistics*, ASBCA Nos. 62938, 62939, 62940, 22-1 BCA ¶ 38,074 (*APL*). The three claims which were the bases for these three appeals were all submitted to the contracting officer (CO) more than six years after the damages were incurred by appellant, Afghan Premier Logistics (APL), and thus presumptively outside the Contract Disputes Act's (CDA's) statute of limitations. APL argued in opposition to the government's motion for summary judgment that evidence of the unreliability of the government's GPS tracking system (which was relevant to the manner in which the government paid APL for one of its three claims, though APL elided the fact that it had no bearing on the other two claims) had been wrongfully withheld by the government, thereby tolling or extending the statute of limitations (*see* MSJ opp'n at 5-6)[2]. APL further argued that it had come across additional evidence (in a separate case in which its counsel represented a

_____

[1] This matter was recently assigned to the undersigned for purposes of addressing this motion for reconsideration, though the author of the original decision, Judge Wilson, remains on the panel considering these appeals.

[2] We refer to APL's opposition to the government's original motion for summary judgment as "MSJ opp'n."

different Afghan trucking company) that the government had withheld problems with the GPS tracking of trucks from it, which merited further discovery (*id*. at 19-21). We were unpersuaded by these arguments, finding that there was inadequate evidentiary support for the assertion that the alleged additional evidence would support tolling the statute of limitations, and granted the government's motion to dismiss on statute of limitations grounds.[3] *See APL*, 22-1 BCA ¶ 38,074 at 184,905.

In its motion for reconsideration, APL argues that there are three reasons for us to set aside our original decision: first, that we erred in not permitting discovery prior to dismissing the appeals; second that there is newly-discovered evidence "that is essential" to its opposition to the motion for summary judgment; and, third, that summary judgment is not appropriate in a case involving the breach of the duty of good faith and fair dealing (app. mot. at 1-2). APL also sought, and was given permission by us, to submit additional information (that had been protected in a different appeal) demonstrating that the GPS information relied upon by the Army was, in fact, suspect, and known to be so by the Army as late as 2012 (*see generally* app. supp. br. *passim*[4]). As will be explained further herein, we remain unconvinced.

## I.  When we Grant Reconsideration

We have long held that a motion for reconsideration is not the place to present arguments previously made and rejected. "[W]here litigants have once battled for the Court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Moreover, "[m]otions for reconsideration do not afford litigants the opportunity to take a 'second bite at the apple' or to advance arguments that properly should have been presented in an earlier proceeding." *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (citations omitted); *see also Avant Assessment, LLC*, ASBCA No. 58867, 15-1 BCA ¶ 36,137 at 176,384. On the other hand, if we have made mistakes in the findings of fact or conclusions of law, or by failing to consider an appropriate matter, reconsideration may be appropriate. *See Robinson Quality Constructors*, ASBCA No. 55784, 09-2 BCA ¶ 34,171 at 168,911; *L&C Europa Contracting Co.*, ASBCA No. 52617, 04-2 BCA ¶ 32,708. "[I]f we have made a genuine oversight that affects the outcome of the appeal, we will remedy it . . . ." *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,146 at 180,841. We may also reconsider a decision if we are presented with newly-discovered evidence. *See, e.g., Raytheon Co, and Raytheon Missile Sys.*, ABSCA No. 59345, et al, 21-1 BCA ¶

---

[3] The government also argued that summary judgment should be granted because APL had executed releases, precluding its filing the claims at issue. Having found that APL's claims were precluded by the statute of limitations, we did not decide this issue. *See APL*, 22-1 BCA ¶ 38,074 at 184,906.

[4] "App. supp. br." refers to "Appellant's Supplemental Memorandum of Law in Support of Motion to Reconsider."

37,860 at 183,844. Newly-discovered evidence in this context has long been recognized as evidence that "could not have been discovered by due diligence prior to the rendition of the initial decision . . . ." *See Girault v. United States*, 133 Ct. Cl. 135, 140, 135 F. Supp. 521, 524 (1955); *see also Del. Valley Floral Grp. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1383-84 (Fed. Cir. 2010) (rejecting evidence that could have been found prior to original deciding of motion).

## II. Explanation of the Bases of APL's Claims

In light of the arguments brought in APL's motion, we find it helpful to elaborate upon the bases of the three individual claims being appealed. This is because, as we discussed in our earlier decision (*see APL*, 22-1 BCA ¶ 38,074 at 184,904) and will address in more detail below, a claim "accrues," and thus begins running the statute of limitations clock, when all events occur that fix the liability and permit the assertion of the claim are known or should have been known. *See* Federal Acquisition Regulation (FAR) 33.201.

### A. The Bases of the Claim Appealed in ASBCA No. 62938

The claim that is the subject of ASBCA No. 62938 was brought on October 28, 2020 and involved allegations that the Army had failed to make payments due under the above-captioned contract (the contract) and that it had failed to pay APL the proper fee for missions cancelled with less than 24 hours notice or any time after APL's trucks had reached the "origin point" on the "required spot date" (R4, tab 191 at 1-2). Notably, nothing in this claim mentioned GPS coordinates or the Army's GPS provider (R4, tab 191 *passim*). We may thus conclude that nothing about GPS information precluded APL from bringing this claim earlier than it did, and, as noted in our original decision (*see APL*, 22-1 BCA ¶ 38,074 at 184,903), in the text of this claim, APL sought to excuse its compliance with the statute of limitations based upon the Army's utilizing a disputes process or because the Army had made statements causing APL to hold off on filing its claims (R4, tab 191 at 6, n.2).

### B. The Basis of the Claim Appealed in ASBCA No. 62939

The claim that is the subject of ASBCA No. 62939 was also submitted on October 28, 2020. This claim was about allegedly undercounted "demurrage." Demurrage is excess time that APL's trucks spent at specified locations waiting for a mission. Any amount of "laytime" above three days at the point of origin or at the destination entitled APL to payment of a daily demurrage rate set forth in the contract. According to APL, the Army undercounted the time that its trucks spent at the relevant locations. (R4, tab 192 at 1-3) Also according to APL, it declined to prove this claim

through the use of "ping shots" from the Army's GDMS[5] contractor because those snapshots of data were not precise enough for use in properly locating APL's trucks (*id*. at 4-5). APL provided an identical excuse for its late filing of this claim as it did in the claim that would turn into Appeal No. 62938 (*see* R4, tab 192 at 3, n.2). Nothing in the claim alleged that APL had been misled regarding the accuracy of the Army's GPS information (*see* R4, tab 192).[6]

### C. The Basis of the Claim Appealed in ASBCA No. 62940

The claim that is the subject of ASBCA No. 62940 was submitted on November 10, 2020. The basis of this claim is that the government constructively changed the contract by increasing the amount of time it took to complete certain missions beyond the time set forth in the relevant transportation movement requests (R4, tab 193 at 1). This claim included the same footnote justifying its tardiness as the two claims discussed above (*see id.* at 4, n.4). Moreover, nothing in this claim mentioned GPS coordinates or the Army's GPS provider (R4, tab 193 *passim*). We may thus conclude that nothing about GPS information precluded APL from bringing this claim earlier than it did.

### III. Why APL's Arguments Are Unavailing

### A. What is Necessary for a Claim to Accrue

We discussed the law regarding claim accrual in our earlier decision, but repeat some of the salient points here and elaborate upon others. "[W]hen a claim accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case." *Triple Canopy, Inc. v. Sec'y of the Air Force*, 14 F.4th 1332, 1339 (Fed. Cir. 2021) (quoting *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016)); *Elec. Boat Corp. v. Sec'y of the Navy*, 958 F.3d 1372, 1375 (Fed. Cir. 2020). "The issue of 'whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue.'"

---

[5] Although not defined in the claim, in APL's supplemental memorandum of law in support of its motion, GDMS is defined as a "global distribution management system" which generates GPS positioning data for the Army's use (app. supp. br. at 4).

[6] This last point is particularly important: the claim is ultimately that APL was not paid the demurrage it was owed by the contract. If APL is owed money under the contract here, it is on the contractual basis that it was to be paid a contractually-specified amount of demurrage for time spent waiting for a mission; not that it is has an independent basis to be owed money when there are GPS issues.

4

*FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012) (quoting *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995)). The events fixing liability should have been known when they occurred unless it is reasonable to find they have been either concealed or were "inherently unknowable" at that time. *Raytheon Missile Systems*, ASBCA No. 58011, 13-1 BCA ¶35,241 at 173,017.

Relevant to the facts here and worthy of elaboration: for statute of limitations purposes, for the claim to accrue it is sufficient for the claimant to know it was wronged and has a cause of action against the government, not necessarily having all the details nailed down. *See Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 68 (1987) (Scalia, concurring) ("[O]nly an allegation is required to *commence* a lawsuit. Proof is never required . . . at that stage." (emphasis in original)). For example, in the somewhat similar Afghan trucking case of *BNN Logistics*, ASBCA No. 61841, *et al*, 21-1 BCA ¶ 37,912, we held that a contractor was positioned to know whether or not its employees were pilfering fuel, thus information about the government's methods of determining whether fuel was stolen was not needed for the contractor to advance the claim that it had been wrongfully overcharged by the government for the alleged theft.[7] *See BNN*, 21-1 BCA ¶ 37,912 at 184,128.

Another helpful case involving a litigant who knew he was wronged, but did not perfect his proof until later, is *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) (en banc). *Martinez*, which we will discuss more later regarding the principle of accrual suspension, involved Captain Martinez, an Army officer, who was discharged, in part, as the result of earlier proceedings that rested upon allegedly false testimony. Some years later, his ex-wife provided him an affidavit stating that false testimony had been provided at the earlier proceedings as part of an effort to assist her in obtaining child custody from Captain Martinez. Captain Martinez used this affidavit as part of his effort to seek an administrative reversal of his discharge. After this proved unsuccessful, he took his case to the Court of Federal Claims, more than six years (the applicable statute of limitations) after he was discharged, but apparently less than six years after he obtained the affidavit from his ex-wife. His suit was dismissed on statute of limitations grounds, which he then appealed to the United States Court of Appeals for the Federal Circuit (the Federal Circuit). *See Martinez*, 333 F.3d at 1299-1301. Although Captain Martinez argued that he had no basis for seeking relief from his discharge until after he received the affidavit from his ex-wife, *see id.* at 1318-19, the Federal Circuit made clear that this was not a good argument. It noted that Captain Martinez knew (as he saw it) at the time of his discharge that he was the victim of fabricated charges and that:

---

[7] We appeared to apply similar logic to the demurrage claims in that appeal, but did not elaborate. *See BNN*, 21-1 BCA ¶ 37,912 at 184,128.

> [t]he only thing that was different [after Captain Martinez obtained the affidavit] was that his claim then had more support than his uncorroborated word. The fact that he had sounder support for his claim at that point, however, is not a sufficient basis to establish equitable tolling.

333 F.3d at 1319 (citing *Vincin v. United States*, 199 Ct. Cl. 762, 468 F.2d 930, 933 (1972). More about the equitable tolling aspect below, but relevant here is the fact that the cause of action did not accrue when Captain Martinez obtained the evidence that (in his view) proved that he was right; rather, it accrued when he had reason to know that he was wronged.

B. <u>APL Presents no Reason That it Could Not Have Brought the Claims for Appeal Nos. 62938 and 62940 in a Timely Fashion</u>

We will discuss the demurrage claim later in this decision, but we may dispose of these two appeals with little effort. The alleged infirmities with the GPS system that APL alleges form the basis for its motion for reconsideration played no role, whatsoever, in these claims as far as we can tell. APL, moreover, makes no effort to explain why it should have anything to do with them.[8] There is no argument that these claims were not submitted more than six years after they accrued; no articulable basis to toll the statute of limitations for these appeals; and no reason to believe discovery of any sort would affect the accrual date. The motion to reconsider our judgment as to these two appeals are denied.

C. <u>Nor is There Reason that APL Could not Have Brought the Claim for Appeal No. 62939 in a Timely Fashion</u>

As discussed above, Appeal No. 62939 is based upon a claim which posited that APL's trucks were waiting at the proper location for missions for a longer period of time than specified in the contract and that the government was not paying the contractually-specified demurrage rate for it. In the claim, APL suggests that the reason for the government's failure to make the proper payments was that the GPS "ping shots" of where the trucks were was inaccurate. APL now argues that the government knew all along that the ping shots were inaccurate, but hid that from APL (*see, e.g.*, app. mot. at 3). The question APL never attempts to answer is why the GPS

---

[8] Nor did APL even acknowledge that its GPS arguments do NOT apply to these claims in either its original opposition to the government's motion for summary judgment or in its reconsideration motion. Though it does not affect our decision here, it would have been better for APL's credibility if it had recognized this fact.

system's alleged inaccuracies (known or unknown) would have prevented it from bringing a claim in a timely manner.

As in *BNN*, where, as discussed above, the contractor's employees knew whether or not fuel was being pilfered and therefore the contractor should have known whether it was wrongly being charged for stolen fuel, *see* 21-1 BCA ¶ 37,912 at 184,128, and also as in *Martinez*, where Captain Martinez knew he was being wronged by untruthful allegations but could not perfect his proof, APL's own employees here (the truck drivers) knew exactly where its trucks were and whether they were in a location that would have entitled them to demurrage. Even if APL's managers did not know where the individual trucks were (something we find somewhat unlikely), APL could always have asked its drivers – especially after the government paid it less demurrage than it had reason to anticipate. Once any disconnect between the demurrage that APL should have anticipated and the demurrage paid by the government became manifest, APL could have submitted a claim, and it did not need to know exactly what was wrong with the government's GPS system to do so. Indeed, as we noted above, the claim that APL submitted, while making a different excuse for being tardy, did not allege that its failure to know that there was something wrong with the government's GPS system prevented it in any way from advancing its rights to compensation. APL has thus provided no basis for us to find that its alleged lack of knowledge about any alleged GPS issues would have prevented a timely claim.

APL's equitable tolling and accrual suspension arguments fare no better. "The doctrine of equitable tolling permits the CDA's statute of limitations to be extended so long as an appellant: 1) has been pursuing its rights diligently; and 2) some extraordinary circumstance stood in the way to prevent timely submission of its claim." *Kamaludin Slyman CSC*, ASBCA No. 62006 *et al.*, 21-1 BCA ¶ 37,849 at 183,794 (citing *Abozar Afzali*, 20-1 BCA ¶ 37,674 at 182,892) "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotation marks and citation omitted). When determining diligence, "courts consider the [litigant's] overall level of care . . . in light of [its] particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011). "[T]he second prong of the equitable tolling test is met only where the circumstances that cause a litigant's delay are both extraordinary and beyond its control." *Menominee*, 136 S.Ct. at 756. The "extraordinary circumstances" analysis asks whether the circumstances rendered "critical information, reasonable investigation notwithstanding, undiscoverable[,]" *Gould v. U.S. Dep't of Health and Human Servs.*, 905 F.2d 738, 745-46 (4th Cir. 1990). "[M]ere excusable neglect is not enough to establish a basis for equitable tolling; there must be a compelling justification for delay, such as 'where the complainant has been induced or tricked by his adversary's misconduct into allowing

the filing deadline to pass.'" *Martinez*, 333 F.3d at 1318 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Here, even if we take the allegations that the government hid its problems with its GPS contractor from APL at face value, they provide no basis for equitably tolling APL's claim. APL always had the ability to bring its claim from the moment the government withheld the demurrage that APL had every reason to believe was owed to it. And there is no link between the "trickery" of the government's allegedly withholding the information about the GPS problems to any inducement of APL to sit on its claims. Moreover, as we noted in our initial decision, APL has simply provided no evidence about how it was affected by the government's withholding. *See APL*, 22-1 BCA ¶ 38,074 at 184,905.

Accrual suspension is somewhat similar to equitable tolling, though not exactly the same thing. It occurs when the government has "concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Martinez*, 333 F.3d at 1319 (quoting *Weckler v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985)). But the *salient* government acts were not hidden: APL well knew that it was not being paid the full demurrage that it alleges it was owed. Put another way, the result of the concealment must be that APL was unaware of the basis of its claim and APL cannot contend that it did not know that basis. For similar reasons, of course, APL's injury was hardly "inherently unknowable." There is no basis for accrual suspension here.

D. Discovery Could Not Have Changed the Results

APL's arguments about discovery fall onto the generic side – mostly citing cases for the proposition that summary judgment is usually not appropriate before discovery has begun, although also arguing that it needs more information about the GPS system in order to present its defense (*see* app. mot. at 2-11). The problem is that, for all the text in the motion spent discussing the GPS system, APL presents no argument that this information was necessary to accrual of the claim. That is, it has presented no potential way that this potential evidence would have changed the results of summary judgment issued on the limited issue of the statute of limitations. As we discussed above, the uncontroverted material facts demonstrate that, regardless of GPS issues, APL's claims accrued more than six years prior to their submission, and even the hypothetical facts that APL sought to prove would not support a finding of either equitable tolling or accrual suspension. Accordingly, because the discovery sought "could not change the results of the pending motion for summary judgment, there is no basis for relief" here. *Kamaludin*, 21-1 BCA ¶ 37,849 at 183,795 (citing *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)).

E.  For Similar Reasons, the Newly Discovered Evidence Changes Nothing

The additional evidence that APL seeks to introduce regarding to the GPS system has much sound and fury to it, but, at the end of the day, signifies nothing material to when the statute of limitations accrued.  As we made clear in both our original decision and above in this opinion, the accrual of APL's claims is not dependent upon the accuracy of the government's GPS provider or what the government knew about it.  Even if the most lurid of allegations said to be supported by the new evidence are, in fact, borne out, they cannot erase the undisputed material facts supporting an accrual date more than six years before APL submitted its claims.

F.  Claims for the Violation of Good Faith and Fair Dealing are Treated no Differently Than Other Claims for Purposes of the Statute of Limitations

APL's final argument is not well taken:  it questions whether we, in fact, dismissed its count regarding the alleged breach of the duty of good faith and fair dealing (we did) and then, citing *BNN*, contends that good faith and fair dealing claims are not subject to summary judgment because they are so fact-intensive (app. mot. at 13-14 citing *BNN*, 21-1 BCA ¶ 37,912 at 184,126).  Even a cursory review of *BNN* shows that it does not mean what APL thinks it means.  The fact-intensive requirement referenced in *BNN* was about the elements of that cause of action, not about whether claims alleging it are subject to the statute of limitations.  *See id.*  Indeed, to be very clear, we did not hold in *BNN* or here today that summary judgment could never be issued on the factual merits of a claim involving the duty of good faith and fair dealing; merely that in *BNN*, the facts were such that more discovery was proper in that particular case.  *See id.*  In any event, the applicability of the CDA's statute of limitations and suitability of summary judgment upon such grounds does not change based upon the cause of action advanced in a claim.  Accordingly, we reject this basis for reconsideration.

CONCLUSION

The motion for reconsideration is denied.

Dated:  June 15, 2023

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

9

I concur                                          I concur


_____          _____
RICHARD SHACKLEFORD                       OWEN WILSON
Administrative Judge                      Administrative Judge
Acting Chairman                           Vice Chairman
Armed Services Board                      Armed Services Board
of Contract Appeals                       of Contract Appeals


  I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA Nos. 62938, 62939, 62940,
Appeals of Afghan Premier Logistics, rendered in conformance with the Board's
Charter.


  Dated:  June 15, 2023


_____
 PAULLA K. GATES-LEWIS
 Recorder, Armed Services
 Board of Contract Appeals