# United States Court of Appeals for the Federal Circuit

---

**ELECTRIC BOAT CORPORATION,**
*Appellant*

**v.**

**SECRETARY OF THE NAVY,**
*Appellee*

---

2019-1621

---

Appeal from the Armed Services Board of Contract Appeals in No. 58672, Administrative Judge David D'Alessandris, Administrative Judge J. Reid Prouty, Administrative Judge Richard Shackleford.

---

Decided: May 19, 2020

---

IAN GERSHENGORN, Jenner & Block LLP, Washington, DC, argued for appellant. Also represented by MATTHEW S. HELLMAN, D. JOE SMITH.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by JOSEPH H. HUNT, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; ALANA M. SITTERLY, RUSSELL SHULTIS, Naval Litigation Office, United States Department of the Navy, Washington, DC.

---

Before LOURIE, MOORE, and CHEN, *Circuit Judges*.

MOORE, *Circuit Judge*.

Electric Boat Corporation appeals from the Armed Services Board of Contract Appeals' grant of partial summary judgment to the United States Department of the Navy, holding that Electric Boat's Contract Dispute Act (CDA) claim is barred by the statute of limitations. Because the Board correctly held that Electric Boat's claim is barred by the statute of limitations, we affirm.

## BACKGROUND

On August 14, 2003, Electric Boat and the Navy entered into a contract (the Contract) for the construction of up to six separate *Virginia*-class nuclear-powered submarines (SSNs), SSN 778 through SSN 783.[1] The Contract established a target price for each submarine, comprising the sum of the target cost and the target profit. *See* J.A. 84 (SSN 783). Electric Boat was entitled to periodic progress payments proportional to Electric Boat's overall construction progress. J.A. 271–79 (Clause H-29). The Navy was required to fully compensate Electric Boat under the Contract until Electric Boat's invoiced costs exceeded

---

[1] The Contract between Electric Boat and the Navy funded full construction of only the first submarine, SSN 778. Pursuant to Clause H-17 of the Contract, the remaining five submarines were funded on an installment basis and the parties' obligations under the Contract were entirely contingent on the future availability of funds. J.A. 238–39. The Navy modified the Contract in January 2004, transitioning the contract to a multi-year procurement contract for the remaining five submarines. J.A. 396. Clause H-20 of the modified contract maintained the installment funding and contingency provisions of Clause H-17.

construction progress at the target price, less certain adjustments. *Id.*

The Contract incorporates by reference the standard Changes Clause under 48 C.F.R. §§ 52.243-1, -2. J.A. 335, 344. The Changes Clause requires that the Navy's Contracting Officer "make an equitable adjustment in the contract price, the delivery schedule, or both" in the event that the Contracting Officer makes a change to the contract that "causes an increase or decrease in the cost of, or the time required for, performance." 48 C.F.R. § 52.243-1(b). The Contract also includes a "Change-of-Law Clause," which provides for a price adjustment in the event that compliance with a new federal law, or a change to existing federal laws or regulations, directly increases or decreases Electric Boat's costs of performance. J.A. 279–81 (Clause H-30). The Change-of-Law Clause specifies that no cost adjustments shall be made thereunder for the first two years after the effective date of the Contract (i.e., until August 15, 2005). J.A. 280. After two years, adjustments shall only be made if a qualifying change of law increases Electric Boat's costs of performance "in excess of $125,000 per ship." J.A. 281 (Clause H-30(c)).

The Change-of-Law Clause requires that Electric Boat promptly notify the Navy's Contracting Officer of a qualifying enactment or change in federal law. J.A. 281 (Clause H-30(d)). Section (e) of the Change-of-Law Clause further provides that requests for price adjustments thereunder be made in accordance with the procedures set forth in Clause H-9, entitled "Documentations of Requests for Equitable Adjustment." J.A. 281 (Clause H-30(e)). Clause H-9 sets forth uniform procedures for submitting requests for equitable adjustments under all articles of the Contract, including the standard Changes Clause. J.A. 228.

On September 15, 2004, OSHA issued a new federal regulation entitled *Fire Protection in Shipyard Employment* (the OSHA Regulation). *See* 69 Fed. Reg. 55,668

(Sept. 15, 2004) (codified at 29 C.F.R. § 1915.501 *et seq.*). The OSHA Regulation, which became effective on December 14, 2004, required companies to post a fire watch if certain conditions are present during "hot work" in shipyard employment. *See id.*; 29 C.F.R. § 1915.504(b). On February 24, 2005, Electric Boat submitted a Notification of Change to the Navy. J.A. 453–57. The Notification stated that "Electric Boat anticipates that compliance with [the OSHA Regulation] will result in an increase in the cost of performance [under the Contract] in excess of $125,000 per ship." J.A. 453.

On June 27, 2007, Electric Boat submitted a cost proposal to the Navy, seeking price adjustments across all six submarines. J.A. 459–69. In October 2008, the Navy countered, challenging Electric Boat's calculations of certain costs. J.A. 554–57. In April 2009, Electric Boat submitted a revised cost proposal to the Navy. J.A. 559–67. On May 2, 2011, the Contracting Officer of the Navy issued a memorandum decision formally denying Electric Boat "entitlement to an adjustment of the contract price." J.A. 705–10. The memorandum stated that Electric Boat's cost proposals had "inadequate support" and that there were "discrepancies between [Electric Boat's] proposal and the Government's review of various documents related to the OSHA change." J.A. 708. The memorandum further stated that if Electric Boat decided to further pursue an adjustment related to the OSHA Regulation, "it should seek adjustment pursuant to [regulations governing] 'Requests for Equitable Adjustment'" by June 3, 2011. *Id.*

On December 19, 2012, Electric Boat filed a certified claim with the Navy, seeking a price adjustment for increased costs it allegedly incurred in complying with the OSHA Regulation. J.A. 711–12. On February 27, 2013, the government issued a Contracting Officer's Final Decision denying Electric Boat's claim. J.A. 713–30. Electric Boat appealed the Contracting Officer's Final Decision to the Board. The Navy moved for summary judgment that

Electric Boat's claim was barred by the statute of limitations. Electric Boat filed a cross-motion for summary judgment that its claim was timely filed.

On December 10, 2018, the Board granted-in-part the Navy's motion for summary judgment and dismissed Electric Boat's complaint.[2] J.A. 17. The Board determined that Electric Boat knew of its claim no later than February 2005, when Electric Boat submitted its Notification of Change to the Navy. J.A. 10. The Board further held that Electric Boat "suffered some injury not later than August 15, 2005, the date two years after the effective date of the [C]ontract when [the Change-of-Law Clause] would first provide the right to a price adjustment." J.A. 10. Because Electric Boat's Claim was not filed until December 2012, more than six years after the August 2005 accrual date, the Board held that Electric Boat's claim was untimely. J.A. 17. Electric Boat appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We review the Board's grant of summary judgment *de novo*. *Gates v. Raytheon Co.*, 584 F.3d 1062, 1067 (Fed. Cir. 2009). Interpretation of a government contract is question of law, which we also review *de novo*. *See Forman v. United States*, 329 F.3d 837, 841 (Fed. Cir. 2003). Though not binding on the Court, we give the Board's legal conclusions careful consideration in view of the Board's considerable experience in construing government contracts. *See Gates*, 584 F.3d at 1067.

---

[2] The Board denied the Navy's motion for summary judgment as it pertained to Electric Boat's claim for costs incurred by Electric Boat's subcontractor, Huntington Ingalls, Inc. J.A. 17–18. The Navy has not challenged this aspect of the Board's decision on appeal.

## I.

A CDA claim "shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). Whether and when a claim has accrued is determined according to the Federal Acquisition Regulation (FAR), the language of the contract, and the facts of the particular case. *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016). The FAR defines claim accrual as "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known." *See* 48 CFR § 33.201. Although "monetary damages need not have been incurred," "[f]or liability to be fixed, some injury must have occurred." *Id.* We conclude the Board correctly determined that Electric Boat's claim accrued more than six years before Electric Boat submitted its claim and that Electric Boat's claim is therefore barred by the statute of limitations.

The plain language of the Contract compels our conclusion. It provides that:

> (b) If, at any time after the effective date of this contract, a New Federal Law is enacted or a change is made to a Currently Applicable Federal Law or a New Federal Law or regulations thereunder promulgated by Federal authorities, and compliance with such new law or change directly results in an increase or decrease in the Contractor's cost of performance of this contract, the contract price(s) shall be adjusted . . . . No such adjustment shall be made for contract costs incurred or projected to be incurred during the two (2) year period after the effective date of this contract.

J.A. 280 (Clause H-30(b)). Electric Boat's injury under the Contract was the enactment of the OSHA Regulation, the compliance with which Electric Boat contends directly increased its costs of performance by more than $125,000 per

submarine. *See* J.A. 453. Because the OSHA Regulation became effective in December 2004, the Navy's liability for a price adjustment became fixed under the Contract on August 15, 2005, when Clause H-30 first provides a right to a price adjustment. *See* J.A. 280. The Board correctly determined that the Navy's liability was fixed, and therefore Electric Boat's claim accrued, on August 15, 2005, more than six years before Electric Boat filed its claim. *See* 48 C.F.R. § 33.201.

Electric Boat contends that its claim for costs did not accrue until May 2, 2011 when the Navy's Contracting Officer denied its request for a price adjustment. It argues that it was not injured under the Contract until it received notice of the Navy's intent to not adjust the contract price. Citing our decision in *Kellogg Brown*, Electric Boat argues that the Board therefore erroneously determined that the procedures required by the Change-of-Law Clause did not delay accrual of Electric Boat's claims. We do not agree.

Although "the limitations period does not begin to run if a claim cannot be filed because mandatory pre-claim procedures have not been completed," the contract here did not require that Electric Boat undertake any such procedures. *See Kellogg Brown*, 823 F.3d at 628. In *Kellogg Brown*, the Army required that the contractor resolve disputed costs with the subcontractor before filing a claim for reimbursement. *Id.* We held that the contractor's claim therefore did not accrue until the contractor resolved cost disputes with the subcontractor as required by the contract. *Id.* at 628–29. The Contract here, however, expressly states that requests for price adjustments under the Change-of-Law Clause "shall be made in accordance with the procedures of the requirement entitled 'DOCUMENTATION OF REQUESTS FOR EQUITABLE ADJUSTMENT.'" J.A. 281 (Clause H-30(e)). The Contract therefore required that Electric Boat follow the standard equitable adjustment procedures set forth in Clause H-9 of the Contract. *See* J.A. 228, J.A. 334. Although the Change-of-Law Clause

required Electric Boat to "promptly notify" the Navy of a qualifying change in law, Electric Boat was not required to await a unilateral Navy price adjustment prior to filing a claim. *See* J.A. 281. Indeed, Electric Boat's injury under Clause H-30 of the contract was the enactment of the OSHA Regulation, not the Navy's refusal to adjust the price.[3] That the Navy did not formally refuse to adjust the price until May 2, 2011 therefore does not excuse Electric Boat's failure to timely file a claim in compliance with the CDA and the plain language of the Contract. *See* J.A. 228; *see also* J.A. 334 (incorporating by reference the FAR's standard Disputes Clause).

## II.

Electric Boat argues two alternative theories of partial timeliness. First, Electric Boat contends that its claim is timely as to five of the six submarines, SSN 779 through SSN 783, because Electric Boat's costs for these submarines did not exceed the target price until after December 19, 2006 (the Critical Date). Because its claims did not exceed the target price, Electric Boat argues that it was being fully compensated and therefore had no claim for equitable adjustment for these submarines until after the Critical Date. Electric Boat's contention is unavailing.

---

[3]    Electric Boat's complaint alleged two counts of relief: one count for an entitlement to a price adjustment and the other count for breach of contract arising from the Navy's May 2, 2011 denial of Electric Boat's request for adjustment. J.A. 75. Electric Boat waived any argument of timeliness under common law breach of contract principles by failing to argue before the Board that its injury arose from the Navy's alleged breach of contract on May 2, 2011. *See* J.A. 14 (identifying Electric Boat's alleged first date of actual injury as December 15, 2006).

Electric Boat was not required to incur actual costs for each submarine before filing a claim for equitable adjustment under the Contract. Instead, when Electric Boat's claim accrued in August 2005, Electric Boat had six years to file a claim for an equitable adjustment to the contractual price terms, including the target cost for each submarine. *See* J.A. 280. That the Navy made progress payments to Electric Boat as required by Clause H-29 of the Contract does not excuse Electric Boat's untimeliness as to any of the six submarines. *See* J.A. 271–79 (Clause H-29). The Navy's payment of scheduled progress payments does not amount to agreement that Electric Boat is entitled to increased actual costs. There was an express provision under the contract for seeking such increased costs—equitable adjustment.

Second, Electric Boat contends that its claims are timely as to the last two submarines, SSN 782 and SSN 783, because the Navy did not authorize funds for Electric Boat to begin construction on the final two ships until December 28, 2006 and January 10, 2008, respectively. Because Clause H-20 of the Contract made Electric Boat's performance contingent upon funding, Electric Boat argues it could not have known the "sum certain" of additional costs that it would incur for these submarines until after the Critical Date. This contention is also unavailing.

Clause H-20 of the Contract merely provides that Electric Boat's expenditure for each fiscal year is contingent on the appropriation of funds. J.A. 245. It establishes that Electric Boat was not authorized to make expenditures or incur obligations in excess of the amounts that the Contracting Officer had specified as available for performance. J.A. 245. Clause H-20 does not, however, make Congressional appropriation a condition precedent for seeking a price adjustment for each submarine. Thus, while Electric Boat was precluded from incurring actual costs in the hull construction of the final two submarines until funding had been approved, it was not precluded from filing a claim for

adjusted target costs for these two submarines under Clause H-30.[4] We therefore reject Electric Boat's second theory of partial timeliness, which runs counter to the plain language of the Contract and would needlessly delay the filing of claims for equitable price adjustments.

## CONCLUSION

We have considered Electric Boat's remaining arguments and find them unpersuasive. For the foregoing reasons, we conclude that the Board correctly determined that the statute of limitations barred Electric Boat's claim and therefore affirm the Board's decision.

### AFFIRMED

No Costs.

---

[4] The Board rejected Electric Boat's argument that its claim did not accrue until June 2007, when it allegedly had the information necessary to assert its claim. J.A. 13. The Board determined that the accrual of Electric Boat's claim was not suspended between August 2005 and June 2007, while Electric Boat gathered the information it deemed necessary to calculate its projected costs. J.A. 13. Because Electric Boat does not challenge this determination on appeal, it has waived any argument that its claim did not accrue until it could calculate the "sum certain" of its incurred costs.