# United States Court of Appeals for the Federal Circuit

---

**STRATEGIC TECHNOLOGY INSTITUTE, INC.,**
*Appellant*

**v.**

**SECRETARY OF DEFENSE,**
*Appellee*

---

2022-1763

---

Appeal from the Armed Services Board of Contract Appeals in No. 61911, Administrative Judge David D'Alessandris, Administrative Judge Owen C. Wilson, Administrative Judge Richard Shackleford.

---

Decided: January 24, 2024

---

JAMES Y. BOLAND, Venable LLP, Tysons Corner, VA, argued for appellant. Also represented by MICHAEL T. FRANCEL, LINDSAY REED, Washington, DC.

MILES KARSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, MARGAET JANTZEN, PATRICIA M. MCCARTHY; KARA KLAAS, Defense Contract Management Agency, United States Department of Defense, Chantilly, VA.

————————————

Before HUGHES, CUNNINGHAM, and STARK, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Strategic Technology Institute, Inc. appeals an Armed Services Board of Contract Appeals' decision denying Strategic Technology Institute, Inc.'s appeal and sustaining the Defense Contract Management Agency's claim. Strategic Technology Institute, Inc. argues that the government's claim is barred under the six-year statute of limitations under the Contract Disputes Act. Because we conclude that the government's claim did not accrue until the government received an inadequate cost proposal from Strategic Technology Institute, Inc., we affirm.

I

A

In April 2008, the Department of the Navy awarded a contract to Strategic Technology Institute, Inc. (STI) to provide various aircraft engineering and support services to the Naval Surface Warfare Center. This was a cost-reimbursable contract with a performance period of one year and four one-year option periods. The contract incorporated Federal Acquisition Regulation (FAR) 52.216-7, Allowable Cost and Payment (Dec. 2002), and FAR 52.242-4, Certification of Final Indirect Costs (Jan. 1997).[1]

Under FAR 52.216-7, the government agreed to pay STI's monthly invoices using agreed-upon provisional billing rates (i.e., "anticipated final rates") "[u]ntil final annual indirect cost rates are established for any period." FAR 52.216-7(e). Since billing rates were provisional rates

————————————

[1]    The FAR is codified in Title 48 of the Code of Federal Regulations. For brevity, we refer to the FAR without corresponding C.F.R. citations.

based on projections, the amounts paid by the government were subject to future adjustment at the end of each contract year based on STI's "actual cost experience for that period." FAR 52.216-7(d)(2)(ii).

The contract required STI to "submit an adequate final indirect cost rate proposal . . . within the 6-month period following the expiration of each of its fiscal years." FAR 52.216-7(d)(2)(i). STI was required to submit its proposals for fiscal year 2008 by June 30, 2009, and for fiscal year 2009 by June 30, 2010. STI was also required to certify its "proposal to establish or modify final indirect cost rates." FAR 52.242-4(a)(1).

The purpose of the proposal was to demonstrate the allowability of STI's billed costs by providing the government detailed entries of STI's expenses. Costs are only allowable when, among other requirements, they are reasonable and satisfy the terms of the contract. *See* FAR 31.201-2(a); *see also* FAR 52.216-7(a) (stating that cost allowability is based on FAR subpart 31.2). STI had the burden to demonstrate that its invoiced costs were allowable by "accounting for costs appropriately and . . . maintaining records, including supporting documentation." FAR 31.201-2(d). When STI failed to meet that burden, the contracting officer could "disallow all or part of a claimed cost that [was] inadequately supported." *Id.* Under FAR 52.216-7(g), "[a]t any time" before final payment for a contract year, the government could also audit STI's invoices and statements of costs, and reduce payments for any costs found unallowable or overpaid.

B

In July 2014, during the Defense Contract Audit Agency's (DCAA) audit of STI's indirect cost rate proposals for 2010 (not at issue in this appeal), DCAA noticed that STI had failed to submit cost rate proposals for fiscal years 2008 and 2009. The government sent requests for these cost rate proposals and corresponding certifications via

email. STI then provided cost rate proposals for both years in July 2014 and certifications in August 2014. It submitted final cost rate proposals for both years on September 30, 2014. J.A. 5.

In August 2014, DCAA informed STI that DCAA had initiated a review of STI's 2008 and 2009 cost rate proposals. DCAA determined that STI's proposals were high risk "[d]ue to the lack of experience with this contractor, as well as missing submissions." J.A. 5 (alteration in the original). DCAA subsequently conducted a multi-year audit to verify that the expenses in the cost rate proposals were allowable.

In June 2015, DCAA issued two audit reports questioning certain direct and indirect costs incurred by STI in 2008 and 2009. In June 2016, the Defense Contract Management Agency (DCMA) informed STI that the government was seeking $368,860 in reimbursement for direct costs, penalties, and interest, and was also questioning indirect costs. On November 30, 2018, DCMA issued a final decision unilaterally establishing rates and demanding payment in the amount of $1,107,788, including $117,245 in penalties and interest.

C

STI timely appealed DCMA's final decision to the Board, arguing that the Contract Disputes Act's (CDA), 41 U.S.C. § 7102 *et seq.*, six-year statute of limitations barred the government's claim. STI did not appeal the merits of the government's cost determinations. STI contended that it timely submitted indirect cost rate proposals in July 2009 and July 2010, respectively, more than six years before DCMA issued its final decision. In the alternative, STI contended that even if STI had not submitted its proposals until 2014, the government's claim accrued in July 2009 and July 2010 when those proposals were due. STI argued that the government should have known its claim existed

when STI failed to submit the proposals by their contractual deadline.

In January 2022, the Board issued a final decision, rejecting STI's statute of limitations argument as contrary to legal precedent. The Board determined, and STI does not now dispute, that the government did not receive STI's indirect cost rate proposals until July 11, 2014, five and four years, respectively, after the two proposals were due. The Board also held that the government did not know and had no reason to know of its claim against STI until it received STI's final 2008 and 2009 cost rate proposals in September 2014. The Board, citing its precedent in *Doubleshot, Inc.*, ASBCA No. 61691, 20-1 BCA ¶ 37,677 at 182,905, held that the statute of limitations on any government claim for disallowed costs does not begin "until the contractor submits the incurred cost proposal and makes available sufficient audit records." J.A. 20. Because the government brought its claim in 2018, within six years from when the government received an inadequate cost proposal from STI in 2014, the Board sustained the government's claim.

STI now appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

II

We review the Board's legal conclusions de novo. *Triple Canopy, Inc. v. Sec'y of Air Force*, 14 F.4th 1332, 1337–38 (Fed. Cir. 2021). "Interpretation of a government contract and interpretation of applicable procurement regulations are questions of law subject to de novo review." *Id.* at 1338. The Board's findings of fact are final, and the court's review is limited to a determination of whether those findings are fraudulent, arbitrary, capricious, based upon less than substantial evidence, or rendered in bad faith. 41 U.S.C. § 7107(b)(2); *Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366, 1370 (Fed. Cir. 2020).

### III

STI contends that the statute of limitations bars the government's claim because the government's claim accrued when the cost rate proposals for 2008 and 2009 were due in June 2009 and June 2010, respectively, and the government did not bring its claim until 2018. The CDA provides that "each claim by the Federal Government against a contractor relating to a contract shall be submitted *within 6 years after the accrual of the claim.*" 41 U.S.C. § 7103(a)(4)(A) (emphasis added).

The statute does not define when "the accrual of the claim" begins. We have explained "when a CDA claim is accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case." *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016). The applicable FAR provision and the facts of this case lead us to conclude that the government's claim did not accrue until STI submitted the cost rate proposals for 2008 and 2009 in September 2014.

### A

We begin with the governing FAR provision defining claim accrual and the incorporated FAR provisions establishing "the conditions of the contract."

Pursuant to FAR 33.201, a claim accrues "when all events, that fix the alleged liability of . . . the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred."[2] The government asserted its claim

---

[2]    STI argues that the FAR improperly incorporated the "knew or should have known" discovery rule when the plain text of the statute does not include such a rule. It

on November 30, 2018, when DCMA issued a final decision unilaterally establishing rates and demanding payment from STI. Hence, if all events that fixed STI's liability for the claim were known or should have been known to the government before November 30, 2012, six years before DCMA issued its final decision, the government's claim would be barred under the statute of limitations.

STI argues that the events that fixed STI's liability were STI's billing of unallowable direct and indirect costs during 2008 and 2009 and STI's failure to timely submit its cost rate proposals. STI argues that when it breached the contract and failed to justify any of its incurred costs, it became liable to the government for all of its unsupported billed costs in 2008 and 2009. We disagree.

The event that fixed STI's liability is the submission of inadequate cost proposals, not STI's failure to submit proposals on time. For a flexibly priced contract like the one at issue here, the government first pays the contractor based on *anticipated* final rate. At the end of the year (within six months from the end of a fiscal year), the contractor submits a cost rate proposal based on "actual cost experience."

---

contends that our many precedents holding that CDA claim accrual is determined, in part, "in accordance with the FAR" and its "knew or should have known" discovery rule, *see, e.g.*, *Kellogg Brown*, 823 F.3d at 626, "cannot survive in light of recent Supreme Court precedent," Reply Br. at 4, specifically *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (explaining that discovery rules "cannot be supplied by the courts" when absent from applicable statute). We need not reach this issue because the outcome of the case is the same regardless of whether we apply the "knew or should have known" discovery rule. Just as we find that the government did not know of the basis for the claim it asserts here until 2014, we are also unpersuaded that the government should have known of its claim any sooner.

FAR 52.216-7(d)(2)(i)–(ii). The government then calculates the final rate based on the contractor's cost rate proposal. FAR 52.216-7(d)(2)(ii). Once the final rate is determined, the government must pay the contractor "any balance of allowable costs . . . not previously paid" and the contractor must also pay "any refunds, rebates, credits, or other amounts . . . to the extent that those amounts are properly allocable to costs for which the contractor has been reimbursed by the Government." FAR 52.216-7(h). In other words, if the contractor spends more than what it has anticipated (i.e., the anticipated final rate is below the actual cost experience), then the government must pay the remaining balance to the contractor. But if the contractor spends less than what it has anticipated, the contractor must reimburse the government.

For a flexibly priced contract, the contractor's liability for receiving overpayment is not fixed merely because the contractor spends less than the anticipated final rate. By design, the contract contemplates that the contractor may spend less (or more) than what the contractor and government originally projected. The contract has built in mechanisms (*e.g.*, cost proposals and calculation of final rate) to settle the difference at the end of each year. But the contractor must remit overpayment if the contractor's actual incurred costs are less than the collectively-agreed or unilaterally-decided final rate.

B

Here, STI submitted the cost rate proposals for fiscal year 2008 and 2009 in September 2014, more than four years after they were due, and only upon the government's request. Upon receiving the cost rate proposals, the government conducted audits to verify that the expenses in the cost rate proposal were allowable (i.e., reasonable and satisfying the terms of the contract). The government's audits found that STI's cost rate proposals included approximately $1 million in unallowable costs. The government

then brought the claim at issue here demanding payment of unallowable costs, penalties, and interests. On appeal, STI concedes that it had the burden to submit adequate cost proposals but failed to meet that burden by submitting them late.

C

Upon review of applicable FAR provisions and the facts of this case, we conclude that the event that started the clock for the statute of limitations is the submission of STI's cost rate proposals in September 2014, not STI's failure to timely submit the proposals. When STI failed to submit its proposal by the contractual deadline, the government had several options, including unilaterally setting rates based on whatever documentation it had at the time, or bringing a claim against STI for breach of its contractual obligation to timely file cost rate proposals. Such a breach of contract claim would have been different from the claim the government asserted here. Rather than alleging a breach of contract, here, the government is disputing the costs included in STI's final proposals. Without those proposals, the government had no basis to assert that the specific, final billed costs were not allowable under the contract. STI's liability for receiving overpayment was not fixed until STI submitted unallowable costs in the cost proposal. Therefore, the government's claim—the claim it actually filed and is at issue here—could not have accrued until STI submitted its cost rate proposals.

Our holding in *Electric Boat Corporation v. Secretary of Navy* does not change the analysis. 958 F.3d 1372 (Fed. Cir. 2020). In *Electric Boat*, Electric Boat and the Navy entered into a contract for the construction of nuclear-powered submarines. *Id.* at 1373. The contract included a change-of-law clause, providing a right to a price adjustment for Electric Boat. *Id.* at 1374. Under the change of law clause, no cost adjustment could be made during the first two-years after the contract took effect. *Id.* That two-year

period ended in August 2005. *Id.* When OSHA issued a new regulation, effective in December 2004, that could increase Electric Boat's cost of performance, Electric Boat and the Navy entered into years of discussions regarding a potential price adjustment. *Id.* Eventually, the Navy formally denied Electric Boat's request for a price adjustment in May 2011, and Electric Boat filed a claim in December 2012, more than six years after the expiration of the two-year period, August 15, 2005. *Id.* at 1375. We held that Electric Boat's claim was barred by the statute of limitations because Electric Boat's injury was the enactment of the OSHA regulation, and the statute of limitations clock began when the contract first provided a right to a price adjustment. *Id.* at 1376.

STI argues that since Electric Boat's claim was "fixed" as soon as a regulation was enacted, the government's claim was fixed, and the statute of limitations period began the moment STI failed to submit its indirect cost rate proposals. STI asserts that because the FAR authorizes the government to audit STI's invoices and associated documentations at "any time" or to unilaterally establish rates when contractors fail to submit their proposals by the contractual deadline, the government does not have the right to bring claims based on late final cost rate proposals. We disagree.

In *Electric Boat*, the price adjustment was triggered by the enactment of the OSHA regulation, but here, as we explain above, the calculation of final rate and subsequent adjustment was triggered by STI's submission of the cost rate proposals. Without the cost rate proposals, there was no basis for calculating and adjusting the final rate. While the government could have audited STI's invoices and associated documentations at "any time," STI points us to no authority (and we are aware of none) that compelled the government to do so. The government did not conduct such an audit and thus, could not have "known" about disputed

costs that would be part of the cost rate proposals and later deemed unallowable.

Lastly, STI argues that our holding would empower a contractor to unilaterally prevent a government claim by refusing to submit its cost rate proposal and certification. We disagree. As we have noted, the government has other options to deter such abuse by a contractor. Even in the absence of receipt of cost rate proposals, the government can audit the documentation it does have, and it can unilaterally adjust the rates charged by a contractor. It can also pursue a breach of contract claim for failure to timely submit cost rate proposals and certifications.

Moreover, contractors are incentivized to submit cost rate proposals to ensure they are reimbursed appropriately, as these submissions reduce the contractor's risk of unilateral rate reductions or disallowance of certain costs. Even STI acknowledges these realities. *See, e.g.*, Reply Br. at 7 ("By not submitting its proposals by the contractual deadline, STI failed to justify its billed costs in the manner required by the contract and the FAR and, therefore, immediately rendered all of them subject to disallowance."). Noncompliant government contractors may also be subjected to additional procedures (such as orders to show cause, cure notices, performance evaluations, and even fraud investigations) and risk being unsuccessful in future bids for new contracts.

Here, STI submitted the cost rate proposals for fiscal year 2008 and 2009, in September 2014, and DCMA issued a final decision disallowing certain costs, unilaterally establishing rates, and demanding payment in November 2018. Because the claim was filed within six years after STI submitted the inadequately supported cost rate proposals, we conclude that the claim is not barred under the six-year statute of limitations.

## IV

We have considered STI's remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**

COSTS

No costs.