NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TEXTRON AVIATION DEFENSE LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1042

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01903-MHS, Judge Matthew H. Solomson.

---

Decided: April 3, 2025

---

WILLIAM R. PETERSON, Morgan, Lewis & Bockius LLP, Houston, TX, argued for plaintiff-appellant. Also represented by WILLIAM BARRON ARBUTHNOT AVERY, DOUGLAS W. BARUCH, JENNIFER M. WOLLENBERG, Washington, DC; JULIE S. GOLDEMBERG, Philadelphia, PA.

DANIEL B. VOLK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, ANTONIA RAMOS SOARES.

---

Before PROST, CLEVENGER, and CUNNINGHAM, *Circuit Judges.*

CUNNINGHAM, *Circuit Judge.*

Textron Aviation Defense LLC ("Textron") appeals from a decision of the United States Court of Federal Claims granting the government's motion to dismiss Textron's complaint for failure to state a claim upon which relief may be granted and, in the alternative, for summary judgment. *Textron Aviation Def. LLC v. United States*, 161 Fed. Cl. 256 (2022) ("*Decision*"). The Court of Federal Claims found Textron's complaint was time-barred by the Contract Dispute Act's six-year statute of limitations. *Id.* at 275. For the reasons explained below, we *affirm* the grant of summary judgment by the Court of Federal Claims.

## I. BACKGROUND

This case relates to pension contracts between the federal government and Textron's predecessor-in-interest, Hawker Beechcraft Defense Company, LLC ("HBDC"). *Decision* at 261–62. Textron seeks approximately $19.4 million in pension cost adjustments from the United States pursuant to the Contract Disputes Act ("CDA"), codified as amended at 41 U.S.C. §§ 7101–7109. *Id.* at 262–63; J.A. 53.

The contracts at issue are subject to certain Cost Accounting Standards ("CAS"). The CAS provisions "provide uniformity in how contractors measure, assign, and allocate costs to Government contracts." *Gates v. Raytheon Co.*, 584 F.3d 1062, 1064 (Fed. Cir. 2009). The CAS provisions include standards for the composition, measurement, adjustment, and allocation of pension costs and pension

cost adjustments. *See* CAS 401–420.[1]  The contracts are covered by the CAS, meaning they incorporate Federal Acquisition Regulation ("FAR") 52.230-2,[2] which requires contractors to comply with all CAS in effect and any later modifications or amendments.  FAR 52.230-2; *Decision* at 260; J.A. 33, 39, 47.

At issue in this case is CAS 413, entitled "Adjustment and Allocation of Pension Cost."  When a business segment closes, CAS 413 provides that the contractor must "determine the difference between the actuarial accrued liability for the segment and the market value of the assets allocated to the segment."  CAS 413-50(c)(12); *Raytheon Co. v. United States*, 747 F.3d 1341, 1346 (Fed. Cir. 2014).  "The difference between the plan's assets and liabilities indicates the amount by which the plan is over- or underfunded."  *Gates*, 584 F.3d at 1065.  CAS 413–50(c)(12)(vi) identifies a method for calculating the government's "share" of this difference.  *Id.*  "If the adjustment results in a surplus, the [g]overnment may be entitled to recover its share from the contractor."  *Raytheon*, 747 F.3d at 1346–47 (citing CAS 413–50(c)(12)(vi)).  "If the adjustment results in a deficit, the contractor may be entitled to recover its share from the [g]overnment."  *Id.* at 1347.

The contractual rights and obligations at issue in this appeal arise from the termination and curtailment of CAS-covered pension contracts between the federal government

---

[1]    The CAS provisions are codified in Title 48 of the Code of Federal Regulations.  For brevity, we refer to the CAS without corresponding C.F.R. citations.  For example, "CAS 412" corresponds to 48 C.F.R. § 9904.412.

[2]    The FAR is codified in Title 48 of the Code of Federal Regulations.  For brevity, we refer to the FAR without corresponding C.F.R. citations.  For example, FAR 52.230-2 corresponds to 48 C.F.R. § 52.230-2.

and Textron's predecessor-in-interest, HBDC. *Decision* at 261–62; J.A. 36, 39, 48. In May 2012, HBDC's parent company and its related entities (collectively, "Beechcraft") began formal bankruptcy proceedings. *Decision* at 262; J.A. 37, 124. HBDC's parent company, the Hawker Beechcraft Corporation ("HBC"), contributed to three employee pension plans, *Decision* at 262, that were available to certain employees who performed under the contracts. J.A. 37. On December 31, 2012, as part of the bankruptcy proceedings, Beechcraft terminated two of the pension plans and curtailed the third. *Decision* at 262; J.A. 37–38. Beechcraft's bankruptcy proceedings concluded on February 15, 2013. *Decision* at 262; J.A. 41.

On March 14, 2014, Textron's indirect parent, Textron Inc. ("TI"), acquired Beech Holdings, LLC;[3] this acquisition included the contracts at issue. *Decision* at 262 & n.10; J.A. 41. "Through a series of corporate acquisitions, mergers, and new entity formations, Textron [ ] acquired the contractual rights and obligations" arising from the termination or curtailment of the three pension plans. *Decision* at 262; J.A. 34, 42.

On April 4, 2018, TI sent a letter to the government requesting pension adjustment costs pursuant to CAS 413; Textron refers to this letter as the "CAS 413 Submission." *Decision* at 262; J.A. 42, 99. TI requested $18.9 million under CAS 413-50(c)(12) because of Beechcraft's pension plan terminations and curtailment. *Decision* at 262; J.A. 43–45, 99, 111. "In February 2020, the Defense Contract Audit Agency audited [TI's April 2018 request] and determined

---

[3]    "On May 13, 2014, [TI] formed Textron Aviation Inc. ("TAI") as the corporate parent of Beech Holdings . . . . On January 1, 2017, [TI] merged Beech Holdings into TAI; as a result, Beechcraft Defense Company (formerly HBDC) became a wholly-owned subsidiary of TAI." *Decision* at 262 n.10.

that the government's share of the terminated plans should be approximately $19.4 million." *Decision* at 262; J.A. 46; *see also* J.A. 218–23.

As of April 6, 2020, the government had not paid, and refused to pay, any Textron entity any of the money TI demanded. *Decision* at 262; J.A. 46. On July 22, 2020, Textron submitted to the government a certified CDA claim for approximately $19.4 million, alleging breach of contract based on the government's failure to pay the requested pension cost adjustments. *Decision* at 262–63; J.A. 34–35; *see also* J.A. 75–94 (claim letter). On September 8, 2020, the contracting officer denied Textron's claim, finding the claim time-barred by the statute of limitations at 41 U.S.C. § 7103. *Decision* at 263; J.A. 172–73.

On December 18, 2020, Textron filed a complaint in the Court of Federal Claims, alleging three counts of breach of contract and seeking total damages of approximately $19.4 million in addition to CDA interest. *Decision* at 263; J.A. 32–53 (complaint). Textron asserted that the government failed to comply with its contractual obligations pursuant to CAS 413. J.A. 32; *see also Decision* at 262–63. On February 16, 2021, the government moved to dismiss or, alternatively, for summary judgment, arguing that Textron's claim is barred by the CDA statute of limitations codified at 41 U.S.C. § 7103(a)(4)(A). *Decision* at 263; J.A. 64, 68. Textron cross-moved for partial summary judgment that its claim was timely. *Decision* at 263; J.A. 175, 193.

The Court of Federal Claims granted the government's motion because it found the statute of limitations precludes Textron's CDA claim. *Decision* at 267, 276. The trial court determined "there simply is no dispute of material fact that Textron . . . knew or should have known all of the information necessary to file a CDA claim at least as early as December 31, 2012, and certainly no later than February 15, 2013," *id.* at 266, when Beechcraft terminated or curtailed the pension plans or when the bankruptcy

proceedings concluded, respectively. *Id.* at 262. Textron submitted its certified CDA claim to the contracting officer on July 22, 2020, J.A. 47, which the trial court found was "well after the six-year CDA claim submission limitations period had run." *Decision* at 266. The trial court also concluded Textron's CAS 413 Submission "was a classic non-routine demand for payment which could have been submitted as a proper CDA claim as early as December 31, 2012, or by February 15, 2013, at the latest." *Id.* at 271 (emphasis omitted).

Textron timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.  STANDARD OF REVIEW

We review a grant of summary judgment by the Court of Federal Claims de novo. *Frankel v. United States*, 842 F.3d 1246, 1249 (Fed. Cir. 2016). The Rules of the United States Court of Federal Claims ("RCFC") provide that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "On a motion for summary judgment, 'all evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party.'" *Frankel*, 842 F.3d at 1249–50 (quoting *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994)).

## III. DISCUSSION

Before this court, Textron argues that the Court of Federal Claims erred in resolving the statute of limitations issue against Textron at the summary judgment stage because the government did not meet its burden to show that Textron knew or should have known the information necessary to assert its claim before July 22, 2014, the

critical date for the statute of limitations.[4]  Appellant's Br. 13, 16, 38.  Textron also argues that the Court of Federal Claims erred in finding Textron's claim was time-barred under 41 U.S.C. § 7103(a)(4)(a), because Textron was injured, and its claim thus accrued, only when the government refused to pay Textron's routine request for pension adjustment costs.  *See id.* at 12, 15.  As explained below, we disagree.

A.

Under the CDA, "[e]ach claim by a contractor against the Federal Government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim."  41 U.S.C. § 7103(a)(4)(A).

We briefly examine claim accrual requirements relevant to the 41 U.S.C. § 7103(a)(4)(A) statute of limitations period.  "[W]hen a CDA claim . . . accrued is determined in accordance with the FAR, the conditions of the contract, and the facts of the particular case." *Strategic Tech. Inst., Inc. v. Sec'y of Def.*, 91 F.4th 1140, 1144 (Fed. Cir. 2024) (quoting *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 626 (Fed. Cir. 2016) ("*KBR*")).  The FAR defines "[a]ccrual of a claim" as:

> the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known.  For liability to be fixed,

---

[4]  Textron also argues that the Court of Federal Claims erred by alternatively dismissing Textron's complaint because the face of the complaint does not demonstrate when Textron knew or should have known the information necessary to file its CDA claim, and the trial court looked beyond the face of the complaint in its ruling.  Appellant's Br. 13, 31.  Because we affirm the trial court's grant of summary judgment, we do not reach this issue.

some injury must have occurred.  However, monetary damages need not have been incurred.

FAR 33.201; *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1320 (Fed. Cir. 2014).

Separately, FAR 2.101 defines the requirements for a "claim" submitted to a contracting officer.  The FAR defines "[c]laim" as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under 41 U.S.C. chapter 71, Contract Disputes, until certified as required by the statute.  A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim.  The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

FAR 2.101.

Under the definition of "[c]laim" in FAR 2.101, demands for payment can be classified as "routine" or "non-routine."  FAR 2.101; *Parsons Glob. Servs., Inc. ex rel. Odell Int'l, Inc. v. McHugh*, 677 F.3d 1166, 1170 (Fed. Cir. 2012). If the request is "non-routine," all that is required for it to constitute a claim under the CDA is that "it be (1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc) (discussing former FAR 33.201, now FAR 2.101).  There is no requirement that a non-routine request be disputed.  If the request for

payment is "routine," however, a preexisting dispute is necessary for it to constitute a claim under the CDA. *Id.* at 1576 & n.6; *Parsons*, 677 F.3d at 1172–73.

## B.

As an initial matter, the Court of Federal Claims did not err in rejecting Textron's argument that CAS 413 contains mandatory pre-claim procedures. *See Decision* at 267–70. The Court of Federal Claims properly rejected Textron's analogy to *KBR*. In *KBR*, unlike here, "the Army required that KBR resolve disputed costs with [its] subcontractor before KBR could present a claim for reimbursement of those costs." 823 F.3d at 628; *see also Elec. Boat Corp. v. Sec'y of the Navy*, 958 F.3d 1372, 1376 (Fed. Cir. 2020) (interpreting *KBR* and holding that "the contractor's claim therefore did not accrue until the contractor resolved cost disputes with the subcontractor as required by the contract."). Textron does not argue that it was precluded by law or regulation from calculating the at-issue sums, but merely that calculation was impractical. *See generally* Appellant's Br. Thus, there were no mandatory pre-claim procedures that would have delayed the accrual of the statute of limitations, and *KBR* does not support Textron's argument that its claim was within the permissible statute of limitations period.

## C.

Textron argues the trial court erred in granting summary judgment based on the statute of limitations because the government did not meet its burden to show that Textron knew or should have known the information necessary to assert a claim before the critical date. Appellant's Br. 31–32.

We conclude that the Court of Federal Claims did not err in its summary judgment analysis. The government bore the burden of proof on its statute of limitations defense, meaning, here, it was the government that needed

to show Textron "kn[ew] or should have . . . known" all the information necessary to assert its CDA claim before the critical date. FAR 33.201; *Shell Oil Co. v. United States*, 751 F.3d 1282, 1297 (Fed. Cir. 2014) ("[T]he defendant has the burden of pleading and proving any affirmative defense that legally excuses performance." (citation omitted)). For a CDA claim, that information includes the amount of the claim—"a sum certain." FAR 2.101; *KBR*, 823 F.3d at 627. Therefore, the question presented to this court is whether the trial court erred in determining the government met its burden to show there was no dispute of material fact that Textron *knew or should have known* that information. *Decision* at 266. We conclude that the trial court did not err in resolving this issue on summary judgment.

The trial court did not err by resolving the issue of whether Textron knew or should have known the sum certain at summary judgment because, even "after drawing all reasonable factual inferences in favor of [Textron] . . . no reasonable factfinder could return a verdict for [Textron]." *Berkley v. United States*, 287 F.3d 1076, 1083 (Fed. Cir. 2002) (cleaned up). The relevant events were all identified in Textron's complaint. *See* J.A. 32–53. Textron points to one allegedly missing piece of information necessary for it to assert its claim: the "sum certain." Appellant's Br. 32–38. All Textron had to do in order to bring its claim in a timely manner was calculate that sum certain (i.e., the CAS adjustment amount) within the six-year period of the statute of limitations. The statements Textron identifies about the complexity of the calculation (for example, that "it took a lot of time . . . to perform the calculation") are conclusory and, without more, are insufficient to preclude summary judgment. Appellant's Br. 35; *see id.* at 32–36. Accordingly, we conclude that the trial court did not err by determining that there was no dispute of material fact that Textron knew or should have known all of the information necessary to file a CDA claim before the critical date. *Decision* at 266.

Because we affirm the trial court's grant of summary judgment in favor of the government, we need not address its alternative dismissal of Textron's complaint under RCFC 12(b)(6).[5] Even if the Court of Federal Claims erred in its dismissal analysis, such error is harmless.

## D.

On appeal, Textron asserts that its April 2018 payment request under CAS 413 was a "routine" request for payment under the contract's terms and that this routine request could not constitute a CDA claim (and thus could not accrue and start the six-year statute of limitations clock) until the government disputed the request in 2020 (and thus injured Textron by refusing to pay). Appellant's Br. 16; *see also id.* at 28. Textron argues that the distinction between routine and non-routine claims is linked to the requirement that a CDA claim accrues only after an "injury must have occurred." FAR 33.201; s*ee also* Appellant's Br. 16. Textron argues the Court of Federal Claims "misread this [c]ourt's precedent in holding that any

---

[5]    In its judgment, the trial court stated, "judgment is entered in favor of defendant, and plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted." J.A. 27. However, the judgment and *Decision* explained that the Court of Federal Claims also granted the government's alternative request for summary judgment. *Decision* at 276 ("[T]he [c]ourt GRANTS the government's motion to dismiss Textron[ ]'s complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted and, in the alternative, for summary judgment pursuant to RCFC 56" and "DENIES Textron[ ]'s cross-motion for partial summary judgment pursuant to RCFC 56.") (emphasis omitted); J.A. 27 (judgment) (similar).

unexpected or unforeseen circumstances would give rise to a non-routine claim." Appellant's Br. 12.

Textron further argues that it was first injured in 2020 and thus its claim accrued in 2020 because that was when the government first disputed the liability request and refused payment. *See* Appellant's Br. 28. The parties agree that Textron submitted its certified claim to the relevant contracting officer on July 22, 2020. *Decision* at 262–63; Appellant's Br. 7; Appellee's Br. 1. Therefore, Textron argues that its claim is not time-barred because it was submitted within the permissible six-year timeframe. We address each of these arguments in turn.

i.

First, we conclude that the trial court did not err by determining that Textron's CAS 413 request for payment was non-routine. *Decision* at 270. While "[t]he distinction between a routine and non-routine request for payment is a factual one," *Parsons*, 677 F.3d at 1170, Textron does not appear to dispute any fact in the record. Textron instead disputes the legal test the Court of Federal Claims applied in making its determination. *See, e.g.*, Appellant's Br. 20.

We conclude the Court of Federal Claims invoked the correct test in determining Textron's claim was non-routine. The Court of Federal Claims found that Textron's CAS 413 submission "is non-routine for the simple reason that the alleged amount owed to Textron . . . has no connection whatsoever to the 'expected or scheduled progression of contract performance,' *Reflectone*, 60 F.3d at 1577, but rather arises from an unanticipated bankruptcy and associated segment closings, *cf. James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1542–43 (Fed. Cir. 1996)." *Decision* at 271. As the trial court's decision properly reflects, the critical question is whether the payment request is "[a] demand for compensation for unforeseen or unintended circumstances"—in which case it "cannot be characterized as 'routine.'" *Reflectone*, 60 F.3d at 1577; *see also*

*James M. Ellett*, 93 F.3d at 1542. We see no legal error in the trial court's articulation of these relevant legal standards.

Contrary to Textron's assertions, our precedent does not limit non-routine claims to only those arising from an "unexpected or unforeseen government action." Appellant's Br. 18; *see also id.* at 20. In *Reflectone*, we considered the distinction between routine and non-routine requests in the context of a request for equitable adjustment. 60 F.3d at 1573. We explained a request for equitable adjustment is a non-routine request because it is a "remedy payable only when unforeseen or unintended circumstances, *such as* government modification of the contract, differing site conditions, defective or late-delivered government property or issuance of a stop work order, cause an increase in contract performance costs." *Id.* at 1577 (emphasis added). The "such as" language indicates that the list of examples is not exclusive. Textron contends that the examples listed in *Reflectone* all concern unforeseen circumstances that resulted from government action. Appellant's Br. 23–24. But this is not accurate. For example, "differing site conditions" are not necessarily a result of government action—they could be caused by natural disasters or other conditions outside of the government's control.

Likewise, in *Parsons*, after summarizing several situations involving non-routine requests for payment, the court observed that "[a] common thread among these *examples* is the presence of some unexpected or unforeseen action on the government's part that ties it to the demanded costs." 677 F.3d at 1170–71 (emphasis added). But as the Court of Federal Claims aptly explained, "[o]bserving a common thread among a few examples . . . is a far cry from conclusively defining a term." *Decision* at 274. Additionally, in *Parsons*, we explained that the payment the plaintiff sought was routine because it was "not a result of intervening unforeseen circumstances *or* government action." 677 F.3d at 1171 (emphasis added). The inclusion of the

word "or" clarifies that intervening unforeseen circumstances do not necessarily require government action.

Textron's reliance on *KBR* is similarly unpersuasive. *See* Appellant's Br. 21–22. In *KBR*, we reviewed a decision of the Armed Services Board of Contract Appeals that "held that any termination of a subcontract is unforeseen or unintended [ ] and therefore produces the immediate accrual of any compensation owed." *KBR*, 823 F.3d at 627. We concluded that the Board's holding was "a misapplication of so-called 'non-routine' requests." *Id.* In doing so, the court explained that the "[t]he origin of this rule, . . . is to permit a contractor that has been injured by 'some unexpected or unforeseen action on the government's part that ties it to the demanded costs,' . . . to seek immediate payment of any damages flowing from the government's action." *Id.* (quoting *Parsons*, 677 F.3d at 1171). Textron relies on this language to argue that "only 'unexpected or unforeseen government action'" allows a contractor to submit a non-routine request. Appellant's Br. 22. But this sentence from *KBR* merely articulates the origin of this rule for context. Indeed, the court in *KBR* did not contemplate whether a non-government action can also give rise to a non-routine request.

We conclude the Court of Federal Claims applied the correct law for distinguishing between routine and non-routine requests and reiterate that a non-routine request does not need to be disputed to constitute a CDA claim. *Reflectone*, 60 F.3d at 1575–76; *see also* FAR 2.101. Because Textron has failed to raise a genuine dispute of material fact on the issue, we find no reversible error in the trial court's determination that Textron's CAS 413 request was non-routine.

ii.

The trial court also did not err in determining Textron was injured for purposes of claim accrual by at least

February 15, 2013. For a CDA claim to accrue and liability to be fixed, "some injury must have occurred." FAR 33.201. Textron contends the earliest injury occurred in 2020, when the government refused to pay Textron's CAS 413 request. Appellant's Br. 28. The Court of Federal Claims did not expressly identify Textron's injury but concluded that Textron's claim accrued no later than February 15, 2013, when Beechcraft's bankruptcy proceedings concluded. *Decision* at 266 n.18. The trial court thus implicitly found Textron had suffered some injury by that date.

This case is analogous to our decision in *Electric Boat*. In that case, we concluded that a contractor's "injury . . . was the enactment of [a new] [r]egulation, the compliance with which [the contractor] contend[ed] directly increased its costs of performance" under existing contracts. *Elec. Boat*, 958 F.3d at 1376. We determined that the government's "liability for a price adjustment became fixed," and the contractor's claim accrued, on the date the contract "first provide[d] a right to a price adjustment"—the contractor's injury was "*not* the [government's] refusal to adjust the price." *Id.* at 1376–77 (emphasis added). Like in *Electric Boat*, here, Textron's injury was not delayed until the government's refusal to pay the request for CAS 413 adjustments.

Textron's predecessor-in-interest sustained damage when the terminations and curtailment of the pension plans triggered its ability to request CAS 413-50(c)(12) pension-cost adjustments. *See* J.A. 81 (Textron's July 2020 certified claim stating that the "termination . . . and curtailment of [the pension plans] triggered CAS § 413-50(c)(12)"). Thus, Textron was injured once CAS 413-50(c)(12) was triggered on December 31, 2012, when the pension plans were terminated or curtailed, or at the latest by February 15, 2013, when the bankruptcy proceedings concluded. *See Decision* at 262. By that point, the government's obligation to pay was fixed; all the events that gave

rise to Textron's right to payment from the government had occurred.

Our conclusion regarding injury is supported by the practical implications of ruling in Textron's favor.  Under Textron's understanding, the limitations period for a CAS 413 adjustment claim would not begin to run until the contractor submitted a request for payment and the government then disputed that request.  Adopting Textron's understanding would effectively allow it to control when the statute of limitations period begins to run, which is impermissible.  Accordingly, we conclude the Court of Federal Claims did not err in implicitly determining "some injury must have occurred," FAR 33.201, prior to the critical date.

## IV. CONCLUSION

We have considered Textron's remaining arguments and find them unpersuasive.  For the reasons above, we *affirm* the grant of summary judgment by the Court of Federal Claims.

## AFFIRMED