NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SIEMENS GOVERNMENT TECHNOLOGIES, INC.,**
*Appellant*

**v.**

**SECRETARY OF THE NAVY,**
*Appellee*

---

2022-2240

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 62601, 62602, Administrative Judge David D'Alessandris, Administrative Judge Owen C. Wilson, Administrative Judge Richard Shackleford.

---

Decided:  May 8, 2024

---

MICHAEL BHARGAVA, Nichols Liu LLP, Washington, DC, argued for appellant.  Also represented by ROBERT NICHOLS, SAMUEL VAN KOPP.

ELIZABETH ANNE SPECK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee.  Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY; ROBYN L. HAMADY, Office of the

General Counsel, United States Department of the Navy, Washington, DC.

———————————————

Before REYNA, MAYER, and CUNNINGHAM, *Circuit Judges.*

PER CURIAM.

Siemens Government Technologies, Inc. ("Siemens") appeals a decision of the Armed Services Board of Contract Appeals ("board") rejecting its claim seeking recovery of the development costs it incurred investigating potential energy conservation measures at military installations in Djibouti and Greece. For the reasons discussed below, we affirm.

## I. BACKGROUND

The relevant facts are set out in detail in the board's decision, *see* J.A. 2–11, and need only be briefly summarized here. Pursuant to 42 U.S.C. § 8287(a)(1), a federal agency can "enter into contracts . . . solely for the purpose of achieving energy savings and benefits ancillary to that purpose." Under such contracts, a contractor incurs the upfront cost of installing energy savings measures and, in exchange, is entitled to "a share of any energy savings directly resulting from implementation of such measures during the term of the contract." *Id.*

In 2007, the Department of Energy ("DOE") entered into Contract DE-AM36-09GO29041 (the "DOE Master Contract") with Siemens' predecessor, Siemens Government Services, Inc. J.A. 309–10, 613. This contract provided the Navy with the authority to issue task orders to Siemens for energy savings performance contract ("ESPC") work. J.A. 630, 654. It specified that an agency task order was "[t]he obligating document that provides the details and requirements for the order of an [ESPC] project, placed against an established master indefinite delivery/indefinite quantity contract." J.A. 706.

Section H of the DOE Master Contract outlines the steps required for issuance of a task order: (1) the agency's contracting officer issues a notice of opportunity; (2) the contractor submits an expression of interest; (3) the contractor submits a preliminary assessment; (4) the contracting officer issues a notice of intent to award ("NIA"); (5) the contracting officer issues a request for proposal; (6) the contractor submits an investment grade audit ("IGA"); (7) the contractor submits a final proposal based on the IGA; and (8) a task order is awarded. *See* J.A. 657–72; *see also* J.A. 2–3. The DOE Master Contract makes clear that an "agency will not be responsible for any costs incurred [by a contractor], such as [p]roposal preparation costs or the costs incurred in conducting the IGA, unless a [task order] is awarded or authorized by the agency [contracting officer]." J.A. 666.

In 2014, the Navy issued a request for preliminary assessment which identified potential energy conservation measures at the following installations: (1) Camp Lemonnier in Djibouti ("CLDJ"); (2) the Naval Support Activity in Souda Bay, Greece; (3) the Naval Air Station in Sigonella, Italy; (4) the Naval Station in Rota, Spain; (5) the Naval Support Activity in Naples, Italy; and (6) the Naval Support Activity in Bahrain. *See* J.A. 789–92. Siemens thereafter submitted preliminary assessments for work at these sites. *See* J.A. 43, 1861–67, 1962–67.

On December 1, 2015, the Navy issued an NIA stating that it intended to award up to five proposed task orders pursuant to the DOE Master Contract. J.A. 803. In this notice, the Navy informed Siemens that it was required to perform IGAs of potential energy savings measures at the "applicable project site facilities" and provide "five Final Proposals summarizing the survey results." J.A. 803. The Navy further stated that Siemens was required to "verify the accuracy of the estimated annual cost savings [it] originally proposed for these projects." J.A. 803. Additionally, the Navy cautioned that the NIA did "not commit the

Government to award a [t]ask [o]rder, or to pay for any of the costs incurred in making the necessary studies or designs for the preparation thereof, or to contract for said services or designs." J.A. 803.

The Navy issued a task order request for proposal for energy saving measures at Souda Bay on December 2, 2015, J.A. 804–06, and a task order request for proposal for CLDJ on March 8, 2016, J.A. 884–86. In June 2016, Siemens informed the Navy that it had concluded that energy conservation measures at CLDJ and Souda Bay were no longer viable. J.A. 976, 982.

On September 26, 2018, the Navy awarded Task Order N39430-18-F-9924 (the "Awarded Task Order") to Siemens. J.A. 1005–266. This task order authorized energy conservation measures at Navy installations in Naples, Rota, and Sigonella, *see* J.A. 1007–09, but did not authorize any such measures at CLDJ or Souda Bay.

Siemens subsequently submitted certified claims to the Navy seeking reimbursement of the approximately $5.2 million in costs it allegedly incurred evaluating potential energy cost savings measures at CLDJ and Souda Bay. J.A. 1824–35. After the Navy's contracting officer issued final decisions denying both claims, *see* J.A. 1836–45, Siemens appealed to the board, *see* J.A. 38–55.

Before the board, Siemens asserted that the Navy violated the covenant of good faith and fair dealing and the superior knowledge doctrine by asking it to incur proposal development costs at CLDJ and Souda Bay even though the Navy knew that energy conservation measures at those locations were not viable. J.A. 38, 49–54. On May 24, 2022, the board issued a decision granting the Navy's motion for summary judgment. *See* J.A. 13. The board rejected Siemens' claim for breach of the duty of good faith and fair dealing, explaining that this duty "applies to government conduct during the performance of the contract, and does not apply to government actions during the formation of

the contract." J.A. 14. The board likewise rejected Siemens' superior knowledge claim, stating that the doctrine of superior knowledge applies only during contract performance and the parties' contract was limited to work at Naples, Rota, and Sigonella. J.A. 17–18. Additionally, the board held that it lacked jurisdiction over Siemens' claim that it was treated unfairly during the bidding process for work at CLDJ and Souda Bay because "an implied contract to treat a bidder honestly is not a contract for the procurement of goods, and thus does not fall within the" board's Contract Disputes Act ("CDA") jurisdiction. J.A. 15.

Siemens then filed a timely appeal with this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

## II. DISCUSSION

### A. Standard of Review

This court reviews *de novo* the board's interpretation of a government contract. *See Forman v. United States*, 329 F.3d 837, 841 (Fed. Cir. 2003). The board's grant of summary judgment on a question of law is likewise subject to *de novo* review. *Id.*; *see also Elec. Boat Corp. v. Sec'y of Navy*, 958 F.3d 1372, 1375 (Fed. Cir. 2020).

### B. Siemens' Contentions

Siemens asserts that it is entitled to recover the costs it incurred assessing potential energy conservation measures at CLDJ and Souda Bay because the Navy required it "to waste millions of dollars investigating conservation measures that the Navy knew could not lead to a viable project." Appellant's Br. 4. It contends, moreover, that the Navy "simultaneously engaged in parallel procurements for energy conservation measures at [CLDJ and Souda Bay] without disclosing this to Siemens." *Id.* at 40.

On appeal, Siemens advances three principal arguments as to why the board erred in denying its claim to recoup the proposal development costs it incurred at CLDJ

and Souda Bay. First, it asserts that the Navy was contractually obligated to reimburse it for the cost of assessing potential energy conservation measures at all of the sites identified in the Navy's request for preliminary assessment. Second, Siemens argues that it is entitled to recoup the costs it incurred at CLDJ and Souda Bay because the Navy violated both the covenant of good faith and fair dealing and the superior knowledge doctrine. Finally, Siemens contends that, under this court's decision in *LaBarge Products, Inc. v. West*, 46 F.3d 1547, 1551–54 (Fed. Cir. 1995), the board had authority to award it its bid preparation costs. We address each of these arguments in turn.

## C. The Parties' Contract

Siemens does not dispute that the Awarded Task Order did not include any energy conservation measures at CLDJ or Souda Bay. Nor does it dispute that Section H.6.2 of the DOE Master Contract states that an "agency will not be responsible for any costs incurred [by a contractor], such as [p]roposal preparation costs or the costs incurred in conducting the IGA, unless a [task order] is awarded or authorized by the agency [contracting officer]." J.A. 666.

Siemens asserts, however, that the potential energy conservation measures at the five sites* identified in the Navy's 2014 request for preliminary assessment were part of one "overall project." Appellant's Br. 46. It further

---

\*    The Navy's 2014 request for preliminary assessment, as noted previously, sought evaluation of potential energy conservation measures at six installations located in Bahrain, Naples, Rota, Sigonella, CLDJ, and Souda Bay. *See* J.A. 789–91. Only five of these installations are relevant to this appeal, however, because the Awarded Task Order does not include any energy conservation measures in Bahrain and Siemens does not seek in this appeal to recover any proposal development costs for that location.

contends that the parties' contract "require[d] the reimbursement of the overall project's development costs if any task order [was] awarded, without any carve-out to exclude development costs at sites that [were] not included in the task order." *Id.* at 28. In essence, Siemens' argument is that because the Navy issued a task order authorizing energy conservation work at some sites, it thereby became liable for the proposal development costs Siemens incurred at all of the sites.

We find this argument unpersuasive for several reasons. First, we reject Siemens' argument that the parties considered the energy conservation measures at Naples, Rota, Sigonella, CLDJ, and Souda Bay to be one "overall project" that was covered by the Awarded Task Order. It is true that the Navy, in 2014, issued a single request for preliminary assessment that identified potential conservation measures at Naples, Rota, Sigonella, CLDJ, and Souda Bay. *See* J.A. 788–92. It is also true that the Navy originally used a single solicitation number to refer to work at all of the sites. *See, e.g.*, J.A. 788. Subsequently-issued documents, however, clearly indicate that the proposed conservation work at each of the different sites was a separate "project" and that only the costs associated with the projects at Naples, Rota, and Sigonella were included in the Awarded Task Order.

For example, the Navy's December 2015 NIA asked Siemens to submit "five Final Proposals" for the different sites and stated that these proposals should "verify the accuracy of the estimated annual cost savings [Siemens] originally proposed for these *projects*." J.A. 803 (emphasis added). The Navy further informed Siemens that it was required "to obtain the required financing and bonding for these *projects*." J.A. 803 (emphasis added).

In November 2016, the Navy issued a revised NIA which likewise referred to the proposed energy conservation measures at the five different sites as different

"projects." J.A. 985. The revised NIA stated that the Navy would notify Siemens "if the *projects* [were] determined to be beneficial to the Navy." J.A. 985 (emphasis added). *See* J.A. 985. The Navy also reiterated that Siemens was obligated "to take necessary actions to obtain the required financing and bonding (if required) for these *projects.*" J.A. 985–86 (emphasis added). In light of the fact that the Navy asked Siemens to submit five separate final proposals and repeatedly referred to work at the different sites as different "projects," it was unreasonable for Siemens to assume that all five of the sites would be treated as a single "overall project" for purposes of recouping its proposal development costs at CLDJ and Souda Bay.

Furthermore, while the Navy ultimately decided to give Siemens the option to "bundle" the energy conservation work at Naples, Rota, and Sigonella for purposes of its final proposal, the Navy recognized that the work at these three sites had originally been three separate projects. J.A. 985 (stating that while Siemens had the option to bundle Naples, Rota, and Sigonella, it was required to "verify the accuracy of the estimated annual cost savings [it] originally proposed for . . . these projects"). Importantly, moreover, although Siemens was given the option to bundle the projects at Naples, Rota, and Sigonella for purposes of its final proposal, the Navy never suggested that any work at CLDJ or Souda Bay—or costs associated with preparing proposals for those sites—could be included in that proposal. *See* J.A. 985.

Second, the DOE Master Contract defines a "Task Order Project" not as the potential energy conservation measures at the various locations identified in preliminary solicitation documents, but instead as the measures that are actually included in an issued task order. J.A. 706 (stating that a "Task Order Project" is "[t]he complete package of energy conservation measures . . . included in a task order for a building, facility or agency"). Relatedly, Section C.1 of the DOE Master Contract, which is entitled "Project

Scope," specifically links the term "project" to the energy conservation measures which are implemented at a particular location and which lead to cost savings at that facility. J.A. 630 (stating that the cost of a "[task order] project . . . must be covered by the energy, water, and related cost savings incurred *at the Federal facility*" (emphasis added)). These contract provisions indicate that the term "project," for purposes of an ESPC task order, refers to the energy conservation measures authorized and implemented at specific agency facilities rather than, as Siemens contends, the full array of potential conservation measures contemplated for multiple locations in preliminary solicitation documents.

Finally, the Awarded Task Order states that it "constitutes and defines the entire agreement between the Contractor and the Government." J.A. 1242. While that document contains detailed discussions of the implementation costs, J.A. 1259–62, cost savings, J.A. 1258, and scope of work associated with the projects in Naples, J.A. 1010–85, Rota, J.A. 1086–149, and Sigonella, J.A. 1150–229, it does not contain any reference to costs incurred at either CLDJ or Souda Bay. Indeed, the Awarded Task Order makes clear that the "[p]roject" sites are the installations in Naples, Rota, and Sigonella. J.A. 1258, 1259, 1260. Because Siemens points to no provision in the Awarded Task Order that can reasonably be interpreted to require the Navy to pay for proposal development costs at sites where energy conservation measures were not authorized, we reject its argument that the Navy was contractually obligated to reimburse it for the assessment costs it incurred at CLDJ and Souda Bay.

### D. Siemens' Remaining Contentions

Siemens' arguments based on the covenant of good faith and fair dealing and the superior knowledge doctrine are similarly unavailing. The covenant "of good faith and fair dealing is inherent in every contract," *Precision Pine &*

*Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010), and "requires a party to respect and implement [a] contract in accordance with its terms," *First Nationwide Bank v. United States*, 431 F.3d 1342, 1350 (Fed. Cir. 2005). As we have previously made clear, however, the covenant does not attach in the absence of an underlying contract. *See Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) (explaining that an agency "could not have breached the covenant of good faith and fair dealing by its pre-award conduct because the covenant did not exist until the contract was signed"). Thus, although Siemens alleges that the Navy caused it "to needlessly incur development costs at [CLDJ] and Souda Bay," Appellant's Br. 40–41, that alleged misconduct cannot support a viable claim for breach of the covenant of good faith and fair dealing because, as discussed previously, Siemens and the Navy never entered into a contract related to CLDJ or Souda Bay.

In *Scott Timber*, we explained that while pre-award conduct cannot support a claim for breach of the covenant of good faith and fair dealing, this does not mean that "pre-contract actions by the government cannot bear on the question of whether the government has complied with its obligations that are eventually imposed by the contract." 692 F.3d at 1372. Here, however, Siemens fails to identify any actions by the Navy, in the period prior to the date it awarded Siemens a contract for ESPC work at Naples, Rota, and Sigonella, which can reasonably be interpreted to demonstrate that this contract was intended to cover proposal development costs for CLDJ or Souda Bay. To the contrary, in its initial NIA, J.A. 803, as well as in four subsequent revisions to that NIA, J.A. 984, 985, 987, 1002, the Navy cautioned that it had not made any commitment to pay for the IGAs or other costs associated with the preparation of Siemens' final proposals for the different installations.

For similar reasons, we conclude that the board correctly rejected Siemens' attempt to recover the proposal development costs it incurred at CLDJ and Souda Bay based upon an alleged violation of the superior knowledge doctrine. *See* J.A. 17–18. "The superior knowledge doctrine imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance." *Giesler v. United States*, 232 F.3d 864, 876 (Fed. Cir. 2000). As the board correctly concluded, the Navy's actions related to the procurement processes at CLDJ and Souda Bay could not have affected Siemens' performance under the awarded contract because that contract only encompassed work at Naples, Rota, and Sigonella. *See* J.A. 18 (explaining that "[t]he [CLDJ] and Souda Bay preliminary assessments and initial [IGA] work did not become part of a task order award, were not [part of the] performance of the contract at issue, and cannot be the subject of a superior knowledge claim" (citation omitted)).

Finally, we turn to Siemens' argument that the board erred in concluding that it had no jurisdiction to consider its claim that it had been treated unfairly during the bidding processes for work at CLDJ and Souda Bay. *See* J.A. 15. In *Coastal Corp. v. United States*, offerors on a solicitation filed a claim with the DOE Board of Contract Appeals seeking to recoup the $2 million that they had spent preparing proposals which never resulted in a contract award. 713 F.2d 728, 729–31 (Fed. Cir. 1983). We concluded, however, that while the board had authority to entertain a claim alleging a breach of a contract for the procurement of goods, it had no CDA jurisdiction over a claim alleging a breach of the duty "to give bids fair and honest consideration." *Id.* at 730 (citation and internal quotation marks omitted). Thus, as the board correctly concluded, it was without jurisdiction to consider Siemens'

claim that it was treated unfairly during the bidding processes for work at CLDJ and Souda Bay.  J.A. 15.

*LaBarge*, 46 F.3d at 1551–54, upon which Siemens relies, is inapposite.  There, we held that the board could properly exercise jurisdiction over a contractor's claim seeking reformation of an existing contract with the government.  *Id.*  *LaBarge*, however, does not help Siemens because it never had a contract with the Navy related to CLDJ or Souda Bay.  We have considered Siemens' remaining arguments but do not find them persuasive.

## III. CONCLUSION

Accordingly, the decision of the Armed Services Board of Contract Appeals is affirmed.

**AFFIRMED**